**In re Motion of William G. SMITH, Esquire, to Review a Fee Agreement in Case Number 91–1496.**

**No. 94–657.**

United States Court of Veterans Appeals.

Aug. 30, 1994.

Before NEBEKER, Chief Judge, and FARLEY and MANKIN, Judges.

NEBEKER, Chief Judge:

In an opinion dated October 22, 1993, the Court ordered the dismissal of the appeal of Ms. Lois B. Lyon from a May 14, 1991, decision of the Board of Veterans' Appeals (Board or BVA) for lack of jurisdiction. *Lyon v. Brown*, 5 Vet.App. 507 (1993). On November 9, 1993, the appellant's attorney, William G. Smith, filed a motion for review of the fee agreement he entered into with Ms. Lyon. Because the matter raised by Mr. Smith's motion is distinct from the issues presented by Ms. Lyon's appeal, the Clerk has been directed to docket this matter separately.

Pursuant to his written agreement with Ms. Lyon, Mr. Smith received a fixed fee of $2,000.00 in addition to a contingency fee of 20% for any retroactive recovery. Mr. Smith, concerned about criminal liability and citing 38 U.S.C. § 7263(c), requests that the Court review the fee agreement in order to determine whether he is required to make a refund since the Court dismissed the appellant's appeal due to lack of jurisdiction. The contingency fee is not at issue, and Ms. Lyon has notified the Court that she does not object to the fixed fee. The Court, having reviewed the motion, declines to exercise its review prerogative because the possibility of criminal liability is so remote as to be virtually nonexistent, and, in any event, our determination of reasonableness or unreasonableness would probably not be controlling.

## I. FACTS

On January 7, 1994, the Court issued an order directing Mr. Smith or the appellant to show cause as to why Mr. Smith's motion for review of the fee agreement should not be dismissed for lack of a case or controversy. On January 28, 1994, Mr. Smith responded to the Court's order by arguing that the very language of 38 U.S.C. § 7263(c) creates a cause of action without requiring a case or controversy.

On February 8, 1994, the Court issued an order directing Mr. Smith to advise the Court whether the appellant has actual notice of the motion for review of the fee agreement filed by Mr. Smith and what position, if any, she takes as to that motion. On February 22, 1994, Mr. Smith revealed that the appellant was notified of the motion but does not desire a refund of the fee which she paid him. Mr. Smith submitted a letter written by the appellant in which she states, "We have discussed [the fee agreement] and are still in full agreement with our original fee agreement[,] which I have always felt was fair, and do not intend to contest...."

## II. ANALYSIS

Pursuant to 38 U.S.C. § 7263(c):

A person who represents an appellant before the Court shall file a copy of any fee agreement between the appellant and that person with the Court at the time the appeal is filed. The Court, on its own motion or the motion of any party, may review such a fee agreement.

The permissive nature of this provision vests in the Court discretion whether to review a fee agreement. This is so whether we are requested to do so, as in this instance, or we act on our "own motion." *See, e.g., Lewis v. Brown*, 5 Vet.App. 151, 154 (1993) (Court will not ordinarily review fee agreement sua sponte).

Mr. Smith is solely concerned with the possibility of criminal prosecution under 38 U.S.C. § 5905. ("Counsel appearing in good faith before this Court should not be left guessing as to whether they have committed a criminal act in so doing." Response to Court's February 8, 1994, Order at 2.) Section 5905 provides in pertinent part that,

[w]hoever (1) directly or indirectly solicits, contracts for, charges, or receives ... any fee or compensation except as provided in

sections 5904 or 1984 of this title, or (2) wrongfully withholds from any claimant or beneficiary any part of a benefit or claim allowed and due to the claimant or beneficiary, shall be fined ... or imprisoned ... or both.

Thus, the only way that an attorney could be subject to criminal penalties for a fee agreement for representation before this Court is if the requirements of section 5904 apply to such a fee agreement and those requirements are not met. (38 U.S.C. § 1984 has no bearing on this discussion since it deals with insurance disputes.) The Court notes first that clause (2) of section 5905 in no way pertains to fee agreements filed with this Court, or indeed to fee agreements for any representation, since it only contemplates instances wherein someone has wrongfully withheld benefits or a claim due the claimant, not where someone has contracted to withhold benefits or a claim due as a condition to representation.

Second, the provisions of section 5904 have no bearing on fee agreements for representation before this Court. The fee agreements addressed in section 5904 are those for representation in VA proceedings only. The sole requirements for agreements limited to fees for representation before the Court are set forth in section 7263(c) and (d)—i.e., that such fee agreements shall be filed with the Court and that they are reviewable by this Court alone for reasonableness.

That section 5904's restrictions on fee agreements apply only to fee agreements for representation before VA and/or the BVA is clear from the language of the statute itself. Subsections (a) and (b) of section 5904 deal with who may represent a claimant before the Secretary and how and when an agent or attorney may be barred from further practice before the Department. Section 5904(c)(1) applies only to proceedings "before the Department" and expressly provides that "th[is] limitation [of allowing fees only in cases where representation was retained before one year after the first final BVA decision] does not apply to services provided with respect to proceedings before a court." Section 5904(c)(2) applies only to representation "before the Department or the [BVA]...."

This subsection provides that the BVA may review such fee agreements and that this Court may review the BVA's findings or orders after it conducts its review of such agreements. Section 5904(c)(3), regarding loan cases, also specifically applies to proceedings "before the Department."

Section 5904(d)(3) does include past-due benefits awarded by, inter alia, this Court. An argument might be made that fee agreements for representation before this Court are included in section 5904(d)(3) based on the fact that the Secretary is forbidden by this subsection to "withhold for the purpose of such payment any portion of benefits payable for a period after the date of the final decision of the Secretary, the [BVA], or Court of Veterans Appeals making ... the award." However, this argument is untenable since section 5904(d)(3) is a command to the Secretary only.

The statutory construct of the fee agreement provisions makes clear that fee agreements before the Board or the Department and those before this Court are completely separate. The Veterans' Judicial Review Act, Pub.L. No. 100–687, 102 Stat. 4105 (1988) (VJRA), this Court's organic act, was divided into different titles. Title I, "Adjudicative and Rulemaking Authority of the Veterans Administration," contained what are now sections 5904 and 5905 of title 38 of the U.S. Code. Section 7263, the fee agreement provision for representation before this Court, was contained in Title III of the VJRA entitled "U.S. Court of Veterans Appeals." There was no criminal provision contained in Title III of the VJRA and none has been added by subsequent amendment to chapter 72 of title 38 of the U.S. Code. Thus, even if we were to find that, pursuant to section 7263, a fee agreement for representation before this Court was unreasonable, no criminal penalties appear to apply.

## III. CONCLUSION

We are mindful of the strict construction principle universally applicable to criminal proscriptions. *See, e.g., Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1752–53, 64 L.Ed.2d 381 (1980); 3 NORMAN SINGER, SUTHERLAND'S STATUTORY CONSTRUC-

TION § 59.03 (5th ed. 1992). Under section 7263, the possibility of criminal liability is virtually nonexistent. That being so, Mr. Smith's concerns are insufficient to prompt this Court to take the extraordinary step of reviewing the fee agreement, which Ms. Lyon commendably endorses. We see no other ground which compels us to review the fee agreement he entered into with his client, and so Mr. Smith's motion is hereby DE-NIED.

Issued with this opinion is a separate order of the en banc Court denying a suggestion by Judge Steinberg for en banc consideration of Mr. Smith's motion. We note that the suggested guidance the non-panel member deems so advisable would hardly shed general light for future fee agreements. This case presents, as he observes, a change of jurisdictional law after the fee agreement was entered into. Thus, the case is so unique that to do as he suggests would shed such a narrow single beam of light as to be incapable of the illumination seemingly so important to him. Moreover, our colleague's suggestion that the panel erred in not addressing *In re Fee Agreement of Wick,* 4 Vet.App. 487, 502 (1993), is based on an erroneous understanding of what the Court held in that case.

Before NEBEKER*, Chief Judge, KRAMER, FARLEY*, MANKIN*, HOLDAWAY, IVERS, and STEINBERG**, Judges.

### ORDER

PER CURIAM.

In a panel* opinion dated October 22, 1993, the Court dismissed, for lack of jurisdiction, the appeal in case number 91–1496. *See Lyon v. Brown,* 5 Vet.App. 507 (1993). On November 9, 1993, the appellant's attorney, William G. Smith, [hereinafter "counsel"] filed a motion for review of the fee agreement that he entered into with the appellant, Lois B. Lyon. The panel has this date denied counsel's motion. During the internal circulation of that opinion before its

release, *see* the Court's Internal Operating Procedures at IV.(a)(2), a non-panel member suggested en banc consideration of the matter. Appended to this order is our colleague's ** statement disagreeing with the duly selected and assigned panel and the vote to deny the suggested en banc consideration.

Upon consideration thereof and of the vote of six judges to deny the suggestion for en banc consideration, it is

ORDERED that the foregoing suggestion is denied.

KRAMER, Judge, concurring:

I concur in the result only.

STEINBERG, Judge, dissenting from denial of en banc consideration:

I requested and voted for en banc consideration of the panel opinion in this case because I believe that the opinion (1) should grant the requested review of the fee agreement and find it not excessive or unreasonable; (2) should not reach out to offer an advisory opinion on a criminal statute not under the Court's jurisdiction; (3) reaches the wrong conclusion about the "possible reach" of section 5905; and (4) reads section 5904(d) in a way that conflicts with the Court's opinion in a prior *In re Fee Agreement of Smith,*[1] for purposes of issuing that criminal-liability advisory opinion. The Court should exercise its discretion under 38 U.S.C. § 7263(d) to review the fee agreement for unreasonableness, as attorney Smith, as "an officer of the Court", has asked, in order to determine "whether counsel is required to refund the $2,000.00 fee [paid to him], in light of the fact that the Court has ruled [under *Hamilton v. Brown,*[2]] that it did not have jurisdiction to hear the appeal", Mot. at 2 (Nov. 9, 1993), and find that the change in Notice of Disagreement (NOD) law made by *Hamilton* did not render unreasonable a fee agreement that was *not* unreasonable when entered into (on August 29, 1991), even though such a fee agreement might be unrea-

---

**1.** 4 Vet.App. 487, 502 (1993) (as to the holding in the consolidated case of *In re Fee Agreement of Wick* ).

**2.** 4 Vet.App. 528, 538 (1993), *appeal docketed,* No. 93–7091 (Fed.Cir. July 7, 1993).

sonable if entered into after the *Hamilton* law change.

I issue this statement only after much reflection. Separate statements as to denials of en banc review suggested not by a party but by a judge on the Court should be rare, although there is certainly ample precedent for them in federal caselaw.[3] Since the instant case is essentially an ex parte matter brought to the Court by attorney Smith and there is no adverse party of record, and because the Court's opinion indirectly gives Mr. Smith an answer to his request for review—that is, the Court is not going to direct him to return the $2000 fee—there would appear to be virtually no likelihood that an external request for en banc review would be forthcoming in this matter. I believe the opinion, however, addresses matters of much importance to our bar, the Secretary, and the operation of judicial review under the Veterans' Judicial Review Act, Pub.L. No. 100–687, Div. A, 102 Stat. 4105, (1988), and does so in a manner and with a result as to which I have grave reservations.

## I. Discussion

### A. Review of the Agreement

Attorney Smith's request for review of the fee agreement is made in good faith and in the best traditions of an attorney acting as an officer of the Court. Even though his client has specifically stated in a February 18, 1994, letter to the Court that she did not contest the $2,000 retainer she paid him, I can think of no valid reason, and the Court's opinion gives none, why Mr. Smith's laudable request does not provide. an appropriate predicate for such a review here. That his client has not asked for the fee to be returned is not determinative of whether Mr. Smith is obligated to refund a fee which is "unreasonable" under section 7263(d). The Court should provide guidance both for the requesting party and the Court's bar about the reasonableness of such a fee agreement.[4]

### B. Unreasonableness

I would have no difficulty in concluding, by analogy to *Breslow v. Brown*, that the *Hamilton* NOD law change did not transform the fee agreement into an unreasonable one. In *Breslow*, the Court refused to vacate a prior final decision, remanding a case for readjudication, issued in accordance with the Court's prior applicable caselaw regarding its jurisdiction that was overruled in *Hamilton;* the Court held that such a prior final decision "cannot be collaterally attacked". 5 Vet.App. 560, 560–61 (1993).

### C. Criminal Law Advisory Opinion/Meaning of Section 5905

The opinion, after noting the Court's lack of authority to "authoritatively opine as to

---

**3.** *See, e.g., Southern Railway Co. v. Lanham,* 408 F.2d 348, 349 (5th Cir.1969) (no accompanying order; Brown, C.J., dissenting from denial of sua sponte motion for rehearing en banc); *Estate of Reynolds v. Martin,* 994 F.2d 690 (9th Cir.1993) (Beezer, J., dissenting from order denying sua sponte request for vote to rehear en banc); *Golden Eagle Distributing Corp. v. Burroughs Corp.,* 809 F.2d 584 (9th Cir.1987) (no accompanying order; dissenting statement of Noonan, J., as to denial of sua sponte request for en banc hearing); *United States v. Valenti,* 999 F.2d 1425 (11th Cir.1993) (Tjoflat, J., dissenting from per curiam order denying sua sponte request for consideration of rehearing en banc); *United States v. Brown,* 520 F.2d 1106, 1119 (D.C.Cir. 1975) (no accompanying order; statement of MacKinnon, J., in support of sua sponte motion to consider case en banc); *United States v. Sambro,* 454 F.2d 918, 924, 927 (D.C.Cir.1971) (Bazelon, C.J., and Leventhal, J., dissenting from denial of sua sponte motion for rehearing en banc).

In addition, the Court's Internal Operating Procedures (IOP) provide: "Designation of an action of the Court for publication is made by any judge who participated (as a single judge, a panel member, **or a nonsitting judge who called for *en banc* consideration**) in that action" (boldface emphasis added). IOP IV.(b)(2). Because IOP V.(a)(5) provides that "[a]ll en banc opinions or orders are published", the IOP appear to recognize the right of a nonsitting judge who called for en banc consideration to designate for publication either an en banc order or a separate statement by that judge in the event of a vote on a party's motion for en banc review and/or in the event of a vote on a sua sponte suggestion for en banc consideration. The IOP are silent as to whether one or both such situations are contemplated.

**4.** *See In re Fee Agreement of Smith,* 1 Vet.App. 492, 500 (1991) (Steinberg, J., concurring) (stressing "very real need to provide future parties—claimants, attorneys, and the Secretary—with some guidelines for the types of fee agreements that are permissible under the law" as well as provide guidance needed by the "parties in the present case").

the reach of a criminal proscription", nevertheless concludes that "the only way that an attorney could be subject to criminal penalties [under 38 U.S.C. § 5905] for a fee agreement for representation before this Court is if the requirements of section 5904 apply to such fee agreements and those requirements are not met" and that "no criminal penalties would apply" even if this Court were to find a fee agreement unreasonable as to representation in this Court. *Ante* at 91. This conclusion, while perhaps sensible from a policy standpoint, diverges from the plain words of section 5905, which is global in its "reach" (it would cover *any* fee charged for *any* type of representation *any*where) as to any fee "except as provided in section[ ] 5904".[5] Hence, after concluding (incorrectly) that section 5904 has "no bearing on fee agreements for representation before this Court", *ibid.*, the opinion, quite anomalously, reaches exactly the wrong result about section 5905, since if section 5904 did *not* apply to fee agreements for representation in this Court that should mean that every such agreement/representation is not "as provided in section[ ] 5904" and, therefore, that crimi-

nal liability under section 5905 would always attach to such agreements/representation. This, of course, would be a kind of nonsensical conclusion, but it illustrates the unwisdom of venturing an advisory opinion that the Court decided early on in *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990), it would avoid. *See Waterhouse v. Principi*, 3 Vet.App. 473, 474 (1992) (in order for there to be a case or controversy, the Court "must have the ability to resolve the conflict through the specific relief it provides").[6]

### D. Meaning of Section 5904(d)

Although the meaning of section 5904(d) is not a question properly presented by this case, if it were to be reached, the Court's precedent in *In re Fee Agreement of Wick* should be addressed.[7] There the Court specifically applied section 5904(d) to a fee agreement for representation in this Court and directed the Secretary to pay directly to attorney Wick twenty percent of the past-due benefits (awarded pursuant to the Court's decision), a result that would hardly seem to have been in order if "the fee agreements addressed in section 5904 are those for rep-

**5.** 38 U.S.C. § 5905 provides in its totality:

Whosoever (1) directly or indirectly solicits, contracts for, charges, or receives, or attempts to solicit, contract for, charge, or receive, any fee or compensation except as provided in sections 5904 or 1984 of this title, or (2) wrongfully withholds from any claimant or beneficiary any part of a benefit or claim allowed and due to the claimant or beneficiary, shall be fined as provided in title 18, or imprisoned not more than one year, or both.

The reference in the exception in clause (1) to section 1984, which relates to suits brought as to claims under certain insurance policies administered by the Department of Veterans Affairs, is not applicable to the issues discussed in this statement or the Court's opinion.

**6.** As long as nonbinding opinions are being offered on matters beyond this Court's jurisdiction, the criminal provision in question, 38 U.S.C. § 5905, would seem to be a textbook example of a criminal proscription so incomprehensible and far-reaching in its potential scope as to be void for vagueness and thus unenforceable.

[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, [455

U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362 (1982)]; *Smith v. Goguen*, 415 U.S. 566, [574] [94 S.Ct. 1242, 1247–48, 39 L.Ed.2d 605] (1974); *Grayned v. City of Rockford*, 408 U.S. 104, [108–09,] [92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222] (1972); *Connally v. General Construction Co.*, 269 U.S. 385, [393] [46 S.Ct. 126, 128, 70 L.Ed. 322] (1926).... [T]he more important aspect of the vagueness doctrine "is ... the requirement that a legislature establish minimal guidelines to govern law enforcement." *Smith*, 415 U.S. at 574, 94 S.Ct. at 1248.

*Kolender v. Lawson*, 461 U.S. 352, 357–58, 103 S.Ct. 1855, 1858–59, 75 L.Ed.2d 903 (1983). *See* Amsterdam, Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U.Pa.L.Rev. 67 (1960). This note has been cited by the Supreme Court in at least 12 opinions for the Court and seven separate opinions. *See, e.g., Hoffman Estates*, 455 U.S. at 499 n. 14, 102 S.Ct. at 1193–94 n. 14; *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 290 n. 12, 102 S.Ct. 1070, 1075, 71 L.Ed.2d 152 (1982); *Vance v. Universal Amusement Co.*, 445 U.S. 308, 315 n. 12, 100 S.Ct. 1156, 1160–61 n. 12, 63 L.Ed.2d 413 (1980); *Hynes v. Mayor and Council of Oradell*, 425 U.S. 610, 622, 96 S.Ct. 1755, 1761–62, 48 L.Ed.2d 243 (1976); *Smith*, 415 U.S. at 572 n. 5, 94 S.Ct. at 1246–47 n. 5.

**7.** 4 Vet.App. 487, 502 (1993).

resentation in VA proceedings only" and if section 5904 has "no bearing on fee agreements for representation before this Court". *Ante* at 91. The opinion does not mention *In re Wick.*

Moreover, the Court's analysis and conclusion digress from the plain meaning of the statute. It is indisputable that subsection (c) of section 5904 does not apply to representation in this Court. Not only does subsection (c)'s language expressly pertain (in paragraphs (1), (2), and (3)) to "a proceeding before the Department" but paragraph (1) expressly excludes "proceedings before a court" from that paragraph's applicability. In contrast, subsection (d) contains *no* reference to the proceedings to which it applies and, rather than excluding court proceedings, paragraph (3) twice explicitly refers to "benefits" awarded in a proceeding before this Court. The conclusion reached by the Court would seem to allow the absurd result of permitting separate contingency-fee agreements for direct payment of twenty percent of past-due benefits as to representation in this Court joined with a similar separate agreement for representation before the Board of Veterans' Appeals and Federal Circuit, thus seeming to allow a total fee of sixty percent to be paid out by the client as to the same case—each of which agreements could be found not unreasonable *separately.* The legislative history of section 5904(d) [8] and the importance of avoiding an interpretation which would permit an absurd result [9] lend further support to the position that section 5904(d) applies to fee agreements for representation before this Court.

## II. Conclusion

In sum, the Court reaches an erroneous conclusion, does so without analysis or exploration of its implications or consistency with Court precedent, other than the conclusory statement that "section 5904(d)(3) is a command to the Secretary only", reaches out, through a criminal statute beyond this Court's jurisdiction, to issue an advisory opinion, and does so without the benefit of

---

**8.** *See In re Fee Agreement of Smith,* 1 Vet.App. at 510 (Steinberg, J., concurring).

**9.** "[C]ourts should strive to avoid attributing absurd designs to Congress, particularly when the

briefing by the parties or interested amici. By deciding this case " 'without benefit of oral argument and full briefing, ... this Court runs a great risk of rendering erroneous or ill-advised decisions that may confuse [the Department of Veterans Affairs and the Court's bar]: there is no reason to believe that this Court is immune from making mistakes, particularly under these kinds of circumstances.' " *Allen v. Hardy,* 478 U.S. 255, 261–62, 106 S.Ct. 2878, 2881–82, 92 L.Ed.2d 199 (1986) (Marshall and Stevens, JJ., dissenting) (quoting *Harris v. Rivera,* 454 U.S. 339, 349, 102 S.Ct. 460, 466, 70 L.Ed.2d 530 (1981) (Marshall, J., dissenting)).

language of the statute and its legislative history provide little support for the proffered, counterintuitive reading." *Sheridan v. United States,* 487 U.S. 392, 402, 108 S.Ct. 2449, 2456, 101 L.Ed.2d 352 (1988).