STEINBERG, Judge,
concurring in part and dissenting in part:
I concur in the Court’s affirmance of the April 6, 1999, decision of the Board of Veterans’ Appeals (Board or BVA) as to whether or not there should be an offset of *80 fees awarded under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(2)(F), although not the rationale stated in support of that result and not necessarily the full amount of the offset imposed. I dissent from the Court’s reversal of that portion of the Board’s decision that found that the 30% contingency fee was unreasonable and excessive in this case. I also disagree with the manner in which the Court has gone about reaching its decision in this case. Many of my concerns are cast in preliminary terms, because I believe, as does my dissenting colleague, Chief Judge Kramer, with whose opinion I am in substantial agreement, that a number of particular matters have been inadequately addressed.
I. Deficient Court Processes
First, the Court either glosses over or ignores entirely a number of important issues (for example, the analysis of pertinent analogous authority, such as the attorney-fee jurisprudence in the federal courts pertaining to the EAJA and Social Security Act (SSA)) that should be part of the basis for judicial decisionmaking in this case. The absence of such an approach is particularly regrettable when the Court is sitting en banc. Equally deficient is the process of the majority here in issuing an en banc opinion that overrules past precedent (1) without briefing from the parties (including possible amicus curiae) on whether that precedent should be abandoned and on certain issues not addressed in the opinion; (2) without en banc oral argument; and (3) without a conference of the full Court.[1] I have long decried this practice,[2] and find it most unfortunate that the Court is continuing down the path that most recently led to the overruling by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in D’Amico v. West, 209 F.3d 1322, 1327 (Fed.Cir.2000), of this Court’s misguided and conclusory holdings in Laruan v. West, 11 Vet.App. 80 (1998) (en banc).[3]
II. Merits
On the merits, I will outline first the nature of the appellant’s representation of the veteran in the proceedings before a *81 Department of Veterans Affairs (VA) regional office (RO), and then discuss my reasons for disagreeing with the Court’s reversal of the BVA decision reducing the 30% contingency fee to 20%. I will conclude with my analysis of the EAJA-offset matter.

A. Introduction

Before turning to the analysis of these two issues, however, I want to express my concern that the majority opinion is more an exercise in policymaking, that is, in judicial legislation, than judicial review of policies established by the popularly-elected and therefore publicly accountable legislative and executive branches. I reach this conclusion because the majority appears to be intent, without any exploration of what may have been the underlying legislative intent, on reaching a one-size-fits-all holding as to EAJA offset, despite the recent incantation by three of the four majority judges that the Court should decide cases on “the narrowest possible grounds”;[4] and on issuing the ominous warning to the Board, at the conclusion of the majority’s opinion, that “the Court trusts that the Board will in the future exercise its authority judiciously, with attention to the seriousness of the intrusion that such a review entails and ... only upon the invitation of the parties or where the fee agreement is patently unreasonable”. Ante at 79 (citations and internal quotation marks omitted). I also conclude that there has been a rush to judgment in general here because, as noted above, the Court issues its pronouncements in each of these instances without providing detailed analysis of the statutory words, underlying legislative intent, or analogous precedent and refuses to recognize, let alone confront, a substantial jurisdictional issue. It seems especially ironic that such legislating from the bench comes so soon after the Court’s ultra vires exercises were rejected by Congress and the Federal Circuit, respectively, last year.[5]

B. Background

At the outset, I will set forth the facts of this case, which, in the main, the majority opinion does not set forth to the extent that I believe is necessary to decide the reasonableness and offset issues, discussed in parts II.C. and II.D., below.
*82 The facts are: In the Court’s merits disposition, the parties submitted a five-page joint motion for remand in February 1998. Record (R.) at 98-103. That motion, which the Court granted via an unpublished February 18, 1998, order signed by the Clerk of the Court, was based on an asserted clear' and unmistakable error (CUE) by the Board in failing to consider in its March 1997 decision the VARO’s error, in its May 1981 decision (R. at 35), of not considering certain potentially applicable regulations in 38 C.F.R. §§ 3.303(a), (b) and 3.304(b) (1980) (presumption of soundness and continuity of symptomatolo-gy). By granting the joint motion for remand, the Court decided specifically that tliose VA regulations were applicable and had not been applied, and that decision of the Court was binding on the Board.[6] After the Court issued its remand order, counsel sent to the Board a June 1998 four-and-one-half-page letter in which the argument beginning on page 2 (R. at 106) was practically a verbatim recitation (except for a few sentences deleted and two new sentences added on pages 4-5, which are, in fact, invalid arguments) of the February 1998 joint motion that this Court had granted. Compare R. at 106-09 with R. at 98-101. Moreover, counsel did not present to the Board even one argument as to how the outcome in 1981 would have been manifestly changed if the RO had applied the overlooked regulations, even though that was the only issue remaining before the Board as to the CUE claim remanded by the Court.[7]
*83 The Board then denied the CUE claims that had been remanded by the Court; the Board found that the application of the regulations that the Court remand had identified as erroneously not applied by the 1981 RO decision would not have “manifestly changed the outcome”[8] of the case based on the evidence of record in May 1981. See R. at 120, 122. The Board then went on to find CUE on an entirely new basis — failure to apply 38 C.F.R. §§ 3.307 and 3.309 (1980), regarding presumptive service connection — because the evidence in May 1981 had showed clearly that the veteran had been diagnosed as having had a psychosis within one year after discharge and that it was then manifested to at last a 10% degree of disability (R. at 123-24).[9]
It is in the context of the foregoing facts about the merits litigation and adjudication and the attorney’s representation before the Court and VA that this appeal should be decided.

C. BVA Decision on Unreasonableness of 30% Contingency Fee

1. Jurisdiction of the Court

In this case, the majority does not predicate its jurisdiction upon a Notice of Disagreement (NOD).[10] I believe that this is an issue that needs to be addressed and resolved by the en banc Court,[11] especially because the appellant has specifically raised the absence of a jurisdiction-conferring NOD in support of his argument that the BVA decision must be vacated. Brief at 14-15. Perhaps the majority is of the view that there is no need for an NOD in order for the Court to have jurisdiction over this matter under chapter 72 of title 38, U.S.Code, notwithstanding the requirement in section 402 of the Veterans’ Judicial Review Act[12] [hereinafter VJRA § 402], that there be such an NOD in order for the Court to carry out under chapter 72 judicial review of “any case”? I could support such a holding that no NOD is needed in order for this Court to review a BVA decision on the reasonableness of a fee agreement.[13]
*84 Rather than address this jurisdictional problem, the Court merely relies on 38 U.S.C. § 7252 and the Federal Circuit’s opinion in In the Matter of the Fee Agreement of Wick, 40 F.3d 367, 370 (Fed.Cir.1994). Ante at 73. However, the Wick opinion does not deal with the NOD requirement of VJRA § 402, and the quotes in the majority’s opinion, ante at 72, do not address that critical matter. Moreover, the misplaced reliance on Wick is made without reference to the fact that Wick, as well as the Federal Circuit’s opinion in Cox v. West, 149 F.3d 1360 (Fed.Cir.1998), and our opinion in Scates v. Gober, 14 Vet.App. 62 (2000) (en banc), concerned this Court’s and the Board’s jurisdiction over a direct-payment fee agreement under section 5904(d). In this case, we are presented with a «on-direct-payment fee-agreement situation under section 5904(c)(2). Because of the significant differences between the statutory provisions concerning direct-payment and non-direct-payment fee agreements where the Board has undertaken sua sponte review of reasonableness, I believe that the Court should address whether the Federal Circuit’s Wick and Cox opinions and our Scates opinion can be relied upon to find jurisdiction in the Court over this matter under section 7252(a) and whether this can properly be done without regard to resolution of the NOD question under VJRA § 402.[14]

2. Fair Process

Assuming that the Court has jurisdiction to review the Board decision on appeal, I would vacate the Board decision on the reasonableness of the 30% contingency fee and remand this matter on a pure fair-process ground. The majority notes that “[o]n the record before the Court, at no time was the appellant advised that the fee agreement was going to be reviewed for reasonableness of the. 30% contingency fee.” Ante at 77. Notwithstanding the Court’s implicit recognition that the Board’s decision to reduce the 30% contingency attorney fee in this case was made without the attorney’s being afforded adequate notice on that issue,[15] the majority never substantively addresses the ramifi *85 cations of such a deficiency. In this regard, I note that section 5904(c)(2) authorizes the Board to conduct a review of fee reasonableness “on its own motion”, and that the use of the word “motion” — as opposed to, for example, “initiative” — may be read as evidencing a legislative intent that when such BVA review is to be undertaken the BVA must follow a process akin to litigation and allow the attorney time to respond, just as a court generally would allow regarding a motion filed by another party. Thus, I would remand to the Board on the 30%-fee-reasonableness issue in order for the BVA to address, in the first instance,[16] the fairness of the process it followed in this case in ordering the attorney to refund to his client one third of the fee he had been paid by his client under their contingency-fee agreement. I believe that it is important not to slough over that possible fair-process deficiency in order to reach the merits of the 30%-to-20% reduction by the Board.[17]

3. Merits of Board’s Reduction

Although I would not reach this issue because I would vacate for consideration of the fairness of the process (again, assuming Court jurisdiction over the merits), the majority does reach this issue — albeit prematurely — and reverses the Board’s decision reducing the attorney’s contingency fee from 30% to 20%. I believe that this result is plainly and demonstrably wrong. The facts outlined in part II.B., above, illustrate that the following conclusion in the Court’s opinion dramatically overstates the quality and effect of the attorney’s representation:
[Sleveral of the 38 C.F.R. § 20.609(e) [ (2000) ] factors actually support the conclusion that the appellant’s 30% contingency fee is not “excessive and unreasonable,” e.g., the case was complex; the attorney was quite competent; [and] he achieved a great deal of success for his client....
Ante at 79 (emphasis added). That outline of the facts shows very clearly that a reduction of the 30% fee is not only reasonable (albeit essentially not for the reasons stated by the Board) but is required under VA’s regulation.[18] This is so (1) because *86 the appellant’s written submission (and the record on appeal contains no others) was a largely verbatim reiteration of the February 1998 joint motion and presented to the Board on remand only the wrong arguments — not being directed to the only issue before the Board of whether correction of the RO’s errors manifestly would have resulted in an award of service connection; [19] (2) because his arguments were related to theories that were totally unsuccessful — having been explicitly rejected by the Board (R. at 120-22); and (3) because he failed to identify to the Board or the Court the CUE theory that the Board ultimately found justified a CUE award (R. at 123-25). The VA regulation mandates that the “extent and type of services”, the attorney’s “level of skill and competence”, and “the amount of time ... spent” all be considered “in determining whether fees are reasonable”. 38 C.F.R. § 20.609(e)(1), (3), (4).[20] Yet the majority does not address those factors, the consideration of which would all tend to support the BVA’s reduction.
In this regard, the Court’s analysis not only fails to consider adequately each of the factors set forth in the VA regulation but fails to consider at all the VJRA legislative history in terms of fee-reasonableness review and the factors that federal courts have prescribed for assessing the reasonableness of contingency-fee agreements in Social Security cases, where a court may order that a fee up to 25% be paid out of a past-due benefits award.[21] For example, the U.S. Court of Appeals for the Sixth Circuit (Sixth Circuit) concluded in assessing the reasonableness of a *87 fee percentage sought by an attorney to be paid out of past-due Social Security benefits awarded:
Deductions should generally fall into two categories: 1) those occasioned by improper conduct or ineffectiveness of counsel; and 2) situations in which counsel would enjoy a windfall because of either an inordinately large benefit award or from minimal effort expended.
Rodriquez v. Bowen, 865 F.2d 739, 746 (6th Cir.1989) (en banc) (emphasis added).[22] The Sixth Circuit then went on to amplify the second category, in terms that resonate as to the facts of the instant case, as follows: “Where a case has been submitted on boilerplate pleadings, in which no issues of material fact are present and where no legal research is apparent, the benchmark twenty-five percent of awards [sic] fee would obviously be inappropriate.” Id. at 747.
It seems almost impossible to believe that Congress intended the extraordinary “reasonableness” review, authorized to be conducted by the BVA and this Court to protect veterans — even if they do not request such protection — to be any less comprehensive than the provision to protect Social Security recipients on which the contingent-fee provisions of section 5904(d) were generally modeled in 1988.[23] It appears that federal courts routinely reduce Social Security direct-pay contingency-fee-agreement amounts (permissible only up to 25%, as contrasted with the more protective 20% maximum for direct-pay contingency-fee agreements permitted by section 5904(d) as to VA benefits) based on reasonableness review where the court believes that the hours worked divided into the contingency-fee amount cannot be justified based on the actual work performed by the attorney.[24]
Because the grounds stated by the majority (relating to the case’s complexity, the competency of the attorney’s work, and the success that he achieved) are without foundation on the facts of this case, the only remaining basis under YA’s regulation (20 C.F.R. § 20.609(e)(8)) for *88 the Court’s decision not to reduce the 30% fee is the Court’s analysis of the risk-taking/risk-sharing nature of contingency-fee agreements in general. Ante at 79. However, that basis alone does not seem sufficient to justify a 30% fee under VA regulations that specify eight factors to be considered in assessing fee reasonableness. Compare 38 C.F.R. § 20.609(e)(1)-(7) with 38 C.F.R. § 20.609(e)(8). Moreover, Social Security caselaw seems replete with statements that a contingency arrangement is only one factor to be considered — and not the only factor.[25] I believe that it is impossible to read these cases and conclude that the Board’s reduction in the instant case is unwarranted, given the facts here (even though part of the Board’s reasoning was incorrect), unless it was Congress’ intention to protect veterans less than Social Security recipients in their fee agreements with attorneys. I know of no basis for reaching such a conclusion, and the language of § 20.609(e) certainly evinces no such intention on the Secretary’s part.[26]
Furthermore, this is exactly the kind of case for which I believe that a BVA sua sponte review under 38 U.S.C. § 5904(c)(2) was designed, in order to protect a VA claimant.[27] Yet, the Court has selected just such a case in which to admonish the Board against intruding into the attorney-client relationship, ante at 79, despite Congressional intent to “provide protection against any overreaching on the part of attorneys.”[28] And, again, the Court has made this rather draconian pronouncement without reference to legislative history or analogous Social Security cases and without providing an adequate opportunity for the Secretary or appellants’ advocates in general to address the issue. The Court’s failure to take into account the extent to which the federal courts examine the reasonableness of attorney fees in Social Se *89 curity cases even where the parties have entered into a contingency-fee agreement, and the factors that the courts consider in determining reasonableness, highlights the defective process used by the en banc Court in deciding this case without further briefing, oral argument, and a case conference.
Finally, I want to stress that I would not deprive the appellant of a reasonable attorney fee despite the foregoing analysis of the nature of the representation provided before the Board. Under VA regulations, a 20% contingency fee is generally presumed to be reasonable (38 C.F.R. § 20.609(f) (2000)). I agree with the majority that it is endemic in the nature of contingency agreements that an “attorney taking a case on a contingent basis may earn a large fee for a very few hours; however, that same attorney also takes the risk that he will receive no fee, regardless of the number of hours spent on a case.” Ante at 79. On the facts of this case, the 20% fee, giving due regard to its contingent nature, certainly provides adequate recompense for the nature and extent of the representation that the appellant provided before the Board.

4. Basis for Reversal

A concluding jurisdictional matter: I am concerned about the Court’s stating that its reversal of the Board’s 30%-to-20% reduction is made “pursuant to 38 U.S.C. § 7263” (ante at 79), rather then the Court’s reversing the Board under section 7252(a). I cannot find in section 7263 any authority for the Court to reverse. Rather, section 7263(d) seems to authorize the Court only to “affirm the finding or order of the Board” or to “order a reduction in the fee called for in the fee called for in the agreement”.[29] One is left to wonder whether the Court’s reference to section 7263 is designed to prevent the Secretary from appealing to the Federal Circuit. See 38 U.S.C. § 7263(d) (“[a]n order of the Court under this subsection is final and may not be reviewed in any other Court”).

D. EAJA Offsetl“Same Work”

As to the majority’s concern about our prior caselaw on the offset question, I would, as noted in part H.A., above, prefer that the Court adhere to a full adversarial process with the participation of the parties before the Court overrules our prior precedent. However, I do tend to agree with the Court that the sentences that it quotes from Fritz v. West, 13 Vet.App. 190, 194 (1999), ante at 74-75 — the first reference as a characterization of Shaw v. Gober, 10 Vet.App. 498 (1997) — that seemed to draw the line at the attorney’s work involving “obtaining more relief from the Department than what the appellant received from the Court” may be overbroad and should be reexamined. However, the analysis should proceed from an allocation of the hours worked by the attorney between Court and VA representation, as I now tend to believe was correctly argued by the Secretary in Fritz, supra, and, if that allocation does not result in a total offset, only then must a comparison be made of the “work” done at the two stages to see if it is essentially “the same” — as my analysis will show that it clearly was here.
The majority, instead, chooses to adopt a one-size-fits-all holding “that the representation of a claimant in pursuit of a claim at all stages of the adjudication pro *90 cess is the ‘same work,’ regardless of the tribunal before which it is performed”. Ante at 72. I have several serious problems with this holding. First, by way of preface, although section 506(c) of the Federal Courts Administration Act of 1992[30] [hereinafter FCAA § 506(c) ], may not be directly applicable, as the Board concluded it was, the majority adopts verbatim (ante at 69-70) the analysis from Shaw, 10 Vet.App. at 504, that the policy of the FCAA § 506(c) prohibition against double payment for the same work applies equally to non-direct-payment fee agreements through the “unreasonable” — fee prohibition embodied in 38 U.S.C. §§ 5904(c)(2) and 7263(d). Hence, it must be borne in mind that the Court’s opinion here would apply with full force to a 20% direct — payment contingency-fee agreement under section 5904(d), and my ensuing analysis proceeds, therefore, as though FCAA § 506(c) were being applied directly in this case. Thus, the impact of the Court’s holding on this point is greater than might be apparent upon initial examination.
It is especially problematic, therefore, that the Court’s opinion eschews any analysis of the nature of the actual work performed by the attorney before the Court in comparison to the work performed before the BVA and merely, ipse dixit, declares them “the same” as a matter of law “for the purposes of EAJA” because the work here and below relate to the “same claim”. Ante at 72. This conclusion seems to me to read “same work” out of the statute; that is, the result reached would be the same if Congress had just provided for an offset whenever EAJA fees are awarded and a contingency fee is paid in connection with the same claim. But the statute does not say that. Moreover, Congress did not say that in the virtually identical SSA language enacted in 1985 in the EAJA extension and amendments in which section 3 expressly prohibited “the claimant’s attorney [from] re-ceiv[ing] fees for the same work under both [SSA direct-payment provision from a past-due award] ... and [the EAJA unless] ... the claimant’s attorney refunds to the claimant the amount of the smaller fee.”[31]
The opinion’s principal stated justification for the interpretive leap of equating “same work” with “same claim” seems to be a citation to Brown v. Gardner,[32] but Gardner has applicability only when there is some interpretive doubt.[33] I *91 don’t see any in the statutory language. But if there is some, then I believe that it is incumbent on the Court to explore both the legislative history as well as the caselaw relating to the section 3 provision regarding SSA awards. The majority, however, does not discuss either of these potential sources of enlightenment in rendering the interpretation it has reached out to impose. In addition, the opinion appears largely to ignore the distinction between collecting the fee for work in the Court or for work at the Department, which was emphasized in In the Matter of the Fee Agreement of Mason, 13 Vet.App. 79, 86 (1999).
Nevertheless, I do tend to agree with the Court’s conclusion as to offset here and that generally EAJA fees should be offset when only a remand is won here. Hence, I believe that the fee-agreement provision in question is invalid in that it attempts to make a blanket offset applicable to every non award remand and that such a blanket approach violates FCAA § 506(c), which, I believe, calls for a fact-specific comparison in each case.
. Such a fact-based analysis would accomplish the result that the majority apparently seeks, but would do so with out resorting to a one-size-fits-all holding. That holding is counterintuitive because there are clearly fact circumstances where the work before the Board or RO will not be “the same” as the work before the Court (such as when the attorney argues only for a reasons-or-bases or duty-to-assist remand here and does entirely different work below in arguing as to the weighing of the evidence before VA on remand, perhaps most clearly illustrated where the application of the duty to assist on remand results in new medical evidence that could not have been part of the argument in the Court but must be argued from on remand).[34] Even were an attorney to seek to align the contingency fee only with representation below (for example, by a fee agreement providing that there will be no contingency fee paid for representation in the Court unless a benefits award is obtained from the Court ),[35] the inquiry would still be whether the attorney is getting paid that fee for “the same work” for which he had been paid an attorney fee under the EAJA.
*92 However, we need not here concern ourselves with any question as to whether any part of the 30% contingency fee should be considered as having been earned by the appellant’s representation before this Court, because, on the facts of this case, the answer is clear, from a comparison of the February 1998 joint motion for remand (R. at 98-103) and the June 2, 1998, letter to the Board (R. at 105-09), that the work below was the “same work” and that an offset would occur under the terms of FCAA § 506(c) (for a direct-payment section 5904(d) fee agreement) or its underlying policy as embodied in the reasonable-fee limitation in sections 5904(c)(2) and 7263(d). Because we know that the attorney did at least $2,400.00 worth of work here, it follows, with one caveat, that $2,400.00 of the $62,000.00 must be offset. The caveat is that any fees-for-fees work[36] included in the EAJA award perhaps should not be offset; that matter was expressly left open in Shaw, 10 Vet.App. at 504-05. It is still one more matter that the opinion needs to deal with because the Court orders that the total EAJA fee be offset and, according to the EAJA application in the underlying case of Weatherspoon v. West, U.S. Vet.App. No. 97-675, the EAJA fees awarded did include two hours for preparing the fee application itself. February 25, 1998, EAJA Application, Exhibit 2 at 3.
Again, I stress that the one-size-fits-all holding laid down by the majority is largely unnecessary to achieve the policy result that the majority apparently seeks (of not letting attorneys — by virtue of cleverly drafted fee agreements — escape offset, i.e., recover double payment for the same work).[37] It is certainly unnecessary on the facts of this case, and one would think that the majority, in accordance with the maxim in Best v. Principi,[38] would want to determine first whether the case can be decided on a more narrow basis. Accordingly, although I would agree with the majority that the total amount of the EAJA award in this case for the merits representation (putting to one side the two hours reimbursed for fees for fees) should be offset against the permissible fee paid by the veteran under the fee agreement, I believe that the one-size-fits-all holding reached by the Court (requiring total EAJA offset in all cases) is unsustainable on the face of the statutory language and especially in light of the dearth of analysis and authority provided for it in the majority opinion.
III. Conclusion
For the foregoing reasons, I am unable to join in the opinion of the Court, although I agree generally with the result reached on the facts of this case on the EAJA-offset question. As to the Board’s decision reducing the 30% contingency fee to 20%, I disagree with the Court’s reversal of that portion of the Board decision.

."If en banc consideration or review is ordered, the Chief Judge .... usually convenes a conference or directs the Clerk to schedule oral argument.” U.S. Vet.App. Internal Operating Procedures V.(a)(4); see Morton v. West, 13 Vet.App. 205, 213 (1999) (en banc order) (Steinberg and Kramer, J.J., dissenting from denial of en banc consideration) (admonishing "that the Court should have the benefit of full briefing from the Secretary and appellants' advocates and full oral argument before deciding the knotty questions involved in this case”); Laruan v. West, 11 Vet.App. 80, 91 (1998) (en banc) (Kramer and Steinberg, J.J., concurring in part and dissenting in part) (noting that "the majority inexplicably renders its wisdom without benefit of a conference of the judges, briefing, or oral argument”); see also Meeks v. West, 13 Vet.App. 40, 41-48 (1999) (en banc order) (Steinberg and Kramer, J.J., dissenting from prior revoked order denying en banc consideration) (protesting panel opinion’s "failure to set forth a reasoned analysis”).

. See Morton and Laruan, both supra note 1; Bailey v. Gober, 10 Vet.App. 454, 456 (1997) (en banc order) (Steinberg, J., dissenting) ("I would prefer to receive full briefing ... at this point”), rev’d, Bailey v. West, 160 F.3d 1360 (Fed.Cir.1998) (en banc); In re Motion of Smith, 7 Vet.App. 89, 95 (1994) (en banc order) (Steinberg, J., dissenting) ("By deciding this case ‘without benefit of oral argument and full briefing, ... this Court runs a great risk of rendering erroneous or ill-advised decisions that may confuse [the Department of Veterans Affairs (VA) and the Court's bar]: there is no reason to believe that this Court is immune from making mistakes, particularly under these kinds of circumstances.’ Allen v. Hardy, 478 U.S. 255, 261-62, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (Marshall and Stevens, JJ., dissenting) (quoting Harris v. Rivera, 454 U.S. 339, 349, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) (Marshall, J., dissenting)).”).

. See also Bailey v. West, supra note 2.

. Best v. Principi, 15 Vet.App. 18 at 19 (2001) (per curiam order). But see Mahl v. Principi, 15 Vet.App. 37, 44-46 (2001) (Steinberg, J., dissenting) (pointing out that Court has never followed practice of deciding cases on "the narrowest possible grounds”).

. See Veterans Claims Assistance Act of 2000, Pub.L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA); Explanatory Statement of Committees on Veterans’ Affairs on VCAA (Background), 146 Cong. Rec. H9913 (daily ed. Oct. 17, 2000) (expressly disapproving of this Court’s opinion in Morton v. West, 12 Vet.App. 477 (1999), remanded on other grounds, 243 F.3d 557 (Fed.Cir.2000) (table)); H.R.Rep. No. 106-781, 106th Cong., 2d Sess. 11 (July 24, 2000), U.S.Code Cong. & Admin.News 2000, 2006, 2014 ("Committee’s intent is to overrule that portion of the decision in Morton that found an implied limitation on VA's authority to provide assistance to claimants who had not submitted ‘well-grounded’ claims”); S.Rep. No. 106-397, 106th Cong., 2d Sess. 72 (Sept. 6, 2000) ("Committee bill ... modifies the pertinent statutes to reinstate VA's traditional practice of assisting veterans at the beginning of the claims process”); see also D'Amico v. West, 209 F.3d 1322, 1327 (Fed.Cir.2000) (overruling Laruan, supra note 1, and noting that in Laman this "[CJourt did not rely on any statutes or regulations to support its position” and "cited the legislative history” pertinent to the statutes at issue there notwithstanding that "no statement in the legislative history support[ed] the court's interpretation of those sections”).

. It is apparent that the Board so concluded. See Record (R.) at 114 (1998 Board of Veterans' Appeals (Board or BVA) decision stating that the question before it was "whether the ... failure [by a VA regional office (RO) ] to consider or follow applicable regulations in its May 1981 rating decision constituted] clear and unmistakable error (CUE)”); Tobler v. Derwinski, 2 Vet.App. 8 (1991). The joint motion for remand stated:
Because the veteran was sound before service, was diagnosed with a disorder in service, and had symptoms of a nervous condition beginning in service and continuing after discharge, he could have been eligible for service connection in accordance with 38 C.F.R. §§ 3.303(a), (b) and 3.304(b) (1980).
However, the May 1981 rating decision did not apply any of these regulations. This Court has ruled that an RO has “undebat-ably committed error” when it "fail[ed] to follow an applicable regulation” and when it “in effect [denied] the existence of evidence that did indeed exist and was a part of the claims file.” Russell, 3 Vet.App. [310,] 319 [(1992) (en banc)]. Whether such error constitutes clear and unmistakable error as contemplated in 38 C.F.R. § 3.105(a) is a matter for the Board, not the Court, to determine. Russell [3 Vet.App.] at 320.
Accordingly, this case should be remanded to allow the BVA to consider all the relevant regulations and determine whether the regional office’s failure to consider or follow applicable regulations in its May 1981 rating decision constitutes clear and unmistakable error.
R. at 101-02 (emphasis added). The motion's citation to the two-step approach adopted in Russell demonstrates that, in granting the joint motion, the Court was determining in the words of Russell, that "the RO undebat-ably committed error ... in failing to follow an applicable regulation”, id. at 319, and that it was "a task for the Board in the first instance .... to determine whether the error made by the RO in 19 [81] was a 'clear and unmistakable error’ under 38 C.F.R. § 3.105(a)”, that is, whether "correction of the error would have [manifestly] changed the outcome”, id. at 320.

. See Russell, 3 Vet.App. at 313-14 (holding that CUE is "the sort of error which, had it not been made, would have manifestly changed the outcome”); see also Bustos v. West, 179 F.3d 1378, 1380 (Fed.Cir.1999) (expressly adopting the "manifestly changed the outcome” language in Russell, supra ), cert. denied, 528 U.S. 967, 120 S.Ct. 405, 145 L.Ed.2d 315 (1999).

. Russell, supra note 7.

. See 38 U.S.C. § 1112(a)(1) (presumption of service connection for "chronic disease becoming manifest to a degree of 10 percent or more within one year from the date of separation from ... service"); 38 C.F.R. § 3.309(a) (1980) (defining "psychoses” as chronic diseases for purposes of section 1112).

. In general, the Court has jurisdiction to review a final BVA decision only where a Notice of Disagreement (NOD) was filed under 38 U.S.C. § 7105 on or after November 18, 1988, as to the underlying decision of an agency of original jurisdiction, usually an RO. See Veterans’ Judicial Review Act, Pub.L. No. 100-687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA § 402]; Velez v. West, 11 Vet.App. 148, 157 (1998) ("Court has no jurisdiction over an issue absent a post-November [17], 1988, NOD, expressing disagreement with an RO's decision on that issue or with an RO’s failure to adjudicate that [issue]”); see also Barrera v. Gober, 122 F.3d 1030, 1031 (Fed.Cir.1997); Grantham v. Brown, 114 F.3d 1156, 1157 (Fed.Cir.1997). Generally, an NOD "shall be filed within one year from the date of mailing of notice of the result of initial review or determination” with which it is disagreeing. 38 U.S.C. § 7105(b)(1).

. The issue was avoided in In the Matter of the Fee Agreement of Mason (Fee Agreement of Mason ), 13 Vet.App. 79 (1999), in the context of an appeal to the Court from a BVA decision that had been issued on the basis of a sua sponte BVA review of a direct-payment fee agreement carried out under 38 U.S.C. §§ 5904(c)(2) and (d).

. See supra note 10.

. Such a holding could be based on the doctrine that the law does not require the impossible because there generally could not be a decision of an RO as to which an NOD could be filed to initiate an appeal to the Board when the Board itself undertakes sua sponte review of a fee agreement under 38 U.S.C. § 5904(c)(2), unless the Court were to require that before the BVA would have the authority to undertake such review it would have to refer the issue of eligibility to an RO *84 for a decision. Compare Carpenter v. Gober, 14 Vet.App. 195 (2000) (per curiam order) (vacating for want of original jurisdiction under 38 U.S.C. § 5904(c)(2) BVA decision that had conducted sua sponte review of reasonableness of attorney fees in non-direct-payment fee agreement, and directing BVA to dismiss that matter, which, after notice to parties, "should be decided by the RO”), and Cox v. West, 149 F.3d 1360, 1364 (Fed.Cir.1998) (holding that "section 5904(c)(2) only gives the Board limited jurisdiction to review the reasonableness of a fee and to reduce the fee”), with In the Matter of the Fee Agreement of Stanley, 10 Vet.App. 104, 105 (1997) (citing 38 U.S.C. § 7263(d) and 7266(a) as basis for Court's jurisdiction over BVA sua sponte review, under 38 U.S.C. § 5904(c)(2), of reasonableness of attorney fees in non-direct-payment fee agreement, and affirming BVA decision finding no eligibility of attorney for fees from past-due benefits). Even then, if such referral were made, there would not be an NOD unless the veteran or attorney filed one, and thus, realistically, sua sponte review would not seem possible except where the RO found ineligibility.

. Related to this jurisdictional inquiry is one as to the jurisdiction of the Board to address in the first instance the question of the appellant’s eligibility, on the facts of this case, to receive a contingency fee under the non-direct-payment fee agreement here involved. R. at 4 (BVA finding that "the criteria for charging and being paid a fee in this case have been met”). Under Cox, 149 F.3d at 1364, which held that "section 5904(c)(2) only gives the Board limited jurisdiction to review the reasonableness of a fee and to reduce the fee”, it appears that the Board had no jurisdiction over that issue.

. See ante at 79 (calling for "full notice to all concerned” before fee agreements are reviewed by the Board); cf. Thurber v. Brown, 5 Vet.App. 119, 126 (1993) (discussing due process in terms of, inter alia, U.S. Constitu *85 tion and nonadversarial nature of VA claims adjudication).

. See Maggitt v. West, 202 F.3d 1370, 1377 (Fed.Cir.2000) (although this Court “may hear legal arguments raised for the first time with regard to a claim that is properly before the [Cjourt, it is not compelled to do so in every instance”). I note in this regard that the appellant did present a December 11, 1998, letter to the Board that defended the reasonableness of the 30% fee. R. at 146-48. Although the Board's November 17, 1998, letter had notified the appellant only that the fee agreement would be reviewed by the BVA because of its failure to provide for an offset of the contingent fee by any fee awarded under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(2)(F), any deficient notice might have been cured by the opportunity that the appellant took, sua sponte, to present a defense of the 30% fee.

. The Court's willingness to finesse this issue further suggests an eagerness to reach the merits of the reasonableness issue and render a policy admonition to the Board. See part II.A., above.

. That regulation, 38 C.F.R. § 20.609(e) (2000), provides:
(e) Pees permitted. Fees permitted for services of an attorney-at-law or agent admitted to practice before the Department of Veterans Affairs must be reasonable. They may be based on a fixed fee, hourly rate, a percentage of benefits recovered, or a combination of such bases. Factors considered in determining whether fees are reasonable include:
(1) The extent and type of services the representative performed;
(2) The complexity of the case;
(3) The level of skill and competence required of the representative in giving the services;
*86 (4) The amount of time the representative spent on the case;
(5) The results the representative achieved, including the amount of any benefits recovered;
(6) The level of review to which the claim was taken and the level of the review at which the representative was retained;
(7) Rates charged by other representatives for similar services; and
(8) Whether, and to what extent, the payment of fees is contingent upon the results achieved.

. See supra notes 6 and 7.

. In addition, as to whether the appellant could, after a decision reducing his fee to 20%, claim that he seeks 30% solely for representation before the Court pursuant to Fee Agreement of Mason, supra note 11, I hazard no view. I note, however, that (1) under paragraph 3 of the fee agreement, quoted ante at 68, it is not clear that the past-due benefits were awarded "on the basis of the client’s claim” (because CUE was found on an entirely different theory) and (2) a fee-agreement "reasonableness” review could still be undertaken by the Board, which in its decision on appeal purported to consider all representation provided "between the final Board decision in December 1997 and the August 1998 Board decision” (R. at 7). I further note that the appellant stated in his December 11, 1998, letter to the Board: "The Court action did not result in an award of past[-]due benefits. Therefore, under the terms of the fee agreement, no fee was due and owing, or otherwise payable, by Mr. Weatherspoon for the work performed at the Court in order to secure a remand.” R. at 148. In any event, that is not a matter presently before us.

.Section 206(b)(1) of the Social Security Act provides, in pertinent part:
Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions of section 405(i) of this title, but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits.
*87 42 U.S.C. § 406(b)(1).

. The factors described by the en banc U.S. Court of Appeals for the Sixth Circuit in Rodriquez v. Bowen, 865 F.2d 739, 746 (6th Cir.1989) (en banc), seem to be representative of those that are generally applied in other jurisdictions as well. See, e.g., Wells v. Sullivan, 907 F.2d 367, 372 (2d Cir.1990); McGuire v. Sullivan, 873 F.2d 974, 981-83 (7th Cir.1989); Hull v. Bowen, 748 F.Supp. 514, 522 (N.D.Ohio 1990); see also Cotter v. Bowen, 879 F.2d 359, 363 (8th Cir.1989) (adopting lodestar hourly-rate analysis, an approach more restrictive than Rodriquez).

. S. Rep. No. 100-418, 100th Cong., 2d Sess. 67 (Jul. 7, 1988) (noting that contingency-fee provision is “similar to that provided for in section 206(a) of the Social Security Act (42 U.S.C. [§ ] 406(a))”).

. See, e.g., Wells, 907 F.2d at 372 (court "ought not blindly approve every fee request made pursuant to a contingent agreement” and “should ... consider ... whether the requested amount is so large as to be a windfall to the attorney” (citing Rodriquez, infra )); McGuire, 873 F.2d at 981 ("court should consider the reasonableness of the contingency percentage to make sure the attorney does not receive fees which are out of proportion to the service performed, the risk of loss[,] and the other relevant considerations”); id. at 982 (“we do not propose a blind approval of contingency fees”); Cotter, 879 F.2d at 365 (although “contingent fee agreement ... must also be considered as a factor in determining a reasonable fee’ ... [,] we cannot say the district court abused its discretion in holding the lodestar [hourly-rate] fee fully compensated for the contingent nature of the fee agreement in this case” (citations omitted) (emphasis added)); Rodriquez, 865 F.2d at 747 ("due deference should be given to th[e] expression of the intentions of the parties [contained in a fee agreement;] ... [h]owever ... a court is not bound to award recovery according to the stated agreement”).

. See cases cited supra note 24. See generally J.F. Ghent, Construction and application of attorney's fee provision (42 U.S.C.A. § 406(b)(1)) of Federal Social Security Act, 22 A.L.R.3d 1081 (1968 & Suppl.2000). In view of the foregoing, I believe that there is a need for thorough research on this subject, which is still another reason why this case should not have been decided without further briefing and oral argument before the full Court.

. See supra note 18. In describing the fee-agreement review process included in the VJRA compromise agreement, Senator Cran-ston stated:
In our meetings to resolve the differences between the Senate-passed and House-passed versions of S. 11, the House committee expressed concern that the cap as articulated in the Senate bill could result in veterans being able to retain effective counsel. To quote an old cliche: "You get what you pay for." Certainly, if we are going to give veterans real access to judicial review, we must give them access to good, qualified attorneys. I -believe that allowing attorneys to charge reasonable fees will accomplish that goal and was convinced by the position of the House that its provisions on this point are preferable to the highly restrictive provisions of the Senate-passed measure [limited to a $500 flat fee].
Additionally, I believe that, along with finally granting veterans the right to obtain judicial review, we should grant them as much latitude as possible to make determinations about their representation. I also note that the compromise included provisions that allow either the BVA or the Court of Veterans Appeals to review a fee agreement for “reasonableness”- — either upon a request from a party or on the Board’s or Court’s own initiative. This should provide protection against any overreaching on the part of attorneys.
134 Cong. Rec. S31461, S31469-70 (1988) (emphasis added).

. Although it is true that the client veteran does not challenge the fee and indeed endorses it (R. at 144 (December 1998 letter from veteran)), it is not clear that he has been aware of exactly what the appellant's representation before the RO actually was responsible for achieving.

. 134 Cong. Rec. at S31470.

. Cf. Cox, 149 F.3d at 1364 ("section 5904(c)(2) only gives the Board limited jurisdiction to review the reasonableness of a fee and to reduce the fee” (emphasis added)). In this regard, it is noteworthy that section 7263(d) is very similar to section 5904(c)(2) of title 38, U.S.Code.

. Pub.L. No. 102-572, § 506(c), 106 Stat. 4506, 4513 (1992) (found at 28 U.S.C. § 2412 note). That provision states:
(c) Fee Agreements. — Section 5904(d) of title 38, United States Code, shall not prevent an award of fees and other expenses under section 2412(d) of title 28, United States Code. Section 5904(d) of title 38, United States Code, shall not apply with respect to any such award but only if, where the claimant's attorney receives fees for the same work under both section 5904 of title 38, United States Code, and section 2412(d) of title 28, United States Code, the claimant’s attorney refunds to the claimant the amount of the smaller fee.

. Pub.L. No. 99-80, § 3, 99 Stat. 183, 186 (1985) (found at 28 U.S.C. § 2412 note).

. Brown v. Gardner, 513 U.S. 115, 117-18, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) ("interpretive doubt is to be construed in the veteran's favor”).

. "[W]hen a statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.” Hartford Underwaters v. Union Planters, 530 U.S. 1, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000) (citations and internal quotation marks omitted). "When the words of a statute are unambiguous, ... this first canon is also the last: judicial inquiry is complete.” Connecticut National Bank v. Germain, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (citations and internal quotation marks omitted). "If .the statute's meaning is clear, we *91 will not consider legislative history." United States v. One 1997 Toyota Land Cruiser, 248 F.3d 899, 903 (9th Cir.2001).

. Consider the following hypothetical: Representation in the Court of 20 hours results in a duty-to-assist remand for which a $3,000 EAJA award is made. The representation below occurs at the RO and BVA, and, after much development of the evidence and a denial by the RO, results in the award of service connection with a 50% rating (awarded by the RO after the BVA awards service connection). The attorney works 90 hours in the 3 proceedings before VA, and a past-due benefits award of $40,000 is ultimately made. There is a 20% direct-payment fee agreement, and thus there would be a contingency fee of $8,000. How much of the $3,000 EAJA award is to be offset in consideration of the work performed before the Court? If the work performed below is in fact entirely different from the work performed before the Court (as is the case because the litigation involved only whether the Board had failed to require that the duty to assist be properly executed and the work below consisted totally of the development and marshaling of evidence and the argument made from the evidence for the award of service connection and the highest possible rating), then there should be no offset of the $3,000 EAJA fee award. If, however, the attorney had expended 10 hours on the same subject that he had argued to the Court, then one-half of the $3,000 awarded, for 20 hours of work before the Court, would be offset and returned to the client.

. Indeed, this is what the appellant appears to have contended to the Board in his December 11, 1998, letter to the Board, as quoted at the end of note 20, supra.

. See generally Swiney v. Gober, 14 Vet.App. 65, 75 (2000) (awarding EAJA fees for litigating EAJA fee application because amount of "fees for fees” sought was reasonable); McNeely (Allan) v. West, 12 Vet.App. 162, 164 (1999) (same).

. Ante at 75, 77 (referring to "drafting of a fee agreement which might unintentionally or intentionally deprive a veteran of his [sic] rights under the law”; referring to "artfully or inartfully drafted contingency fee agreement which could circumvent the letter and spirit of EAJA”).

.See supra note 4.