**In the Matter of the Fee Agreement of Kenneth B. MASON, Jr., in Case Number 90–920.**

**No. 96–1663.**

United States Court of Appeals for Veterans Claims.

Argued Oct. 8, 1998.

Decided Oct. 6, 1999.

Kenneth M. Carpenter for the appellant.

R. Randall Campbell, Deputy Assistant General Counsel, with whom John H. Thompson, General Counsel; and Ron Garvin, Assistant General Counsel, were on the briefs, for the appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

HOLDAWAY, Judge:

Kenneth B. Mason, Jr., Esq., appeals an August 1996 decision of the Board of Veterans' Appeals (Board or BVA) which found that he was not entitled to the payment of attorney fees from past-due benefits awarded to his client, veteran John R. Vosefski, for an increased disability rating

and for a rating of total disability based on individual unemployability (TDIU). The Board found that neither the increase in the veteran's disability rating nor the TDIU rating had been the subject of a final BVA decision and that Mr. Mason was therefore not eligible to receive from the Secretary a direct payment of attorney fees based on a withholding by the Department of Veterans Affairs (VA) from the resulting past-due benefits awarded. This Court has jurisdiction under 38 U.S.C. §§ 5904(c)(2), 7252(a), and 7263(d) to review the Board's legal interpretations and factual findings in a decision denying an attorney's eligibility under 38 U.S.C. § 5904 for direct payment by the Secretary of fees from an award of past-due benefits. *See In re Fee Agreement of Cox,* 10 Vet.App. 361, 366 (1997). For the following reasons, the Court will reverse the decision of the Board in part, vacate it in part, and remand two matters.

## I. FACTS

The veteran filed a claim in January 1988 for, inter alia, service connection of a back disability secondary to his service-connected knee disability. A VA regional office (VARO) initially denied the claim. In that rating decision, the VARO noted that at a March 1988 VA medical examination the veteran had reported that he had been unemployed for seven years. In May 1990, the BVA also denied the veteran's claim for secondary service connection for his back. The veteran timely appealed the BVA decision to this Court. In July 1991, the veteran entered into a fee agreement with the appellant for legal services before this Court, the BVA, and VA. In January 1993, this Court vacated the Board's decision denying the veteran's claim for secondary service connection of his back disability and remanded the matter for readjudication. The Court affirmed the Board's decision denying his claim for increased compensation for his knee disorder.

In September 1993, the BVA remanded the veteran's secondary service connection claim to the VARO for further development, and ordered that if the VARO's determination remained adverse to the veteran, the claim should be returned to the Board for further review. In October 1993, Mary Gallagher, Counsel to the Chairman of the BVA, wrote a letter to the appellant explaining that the restriction in 38 U.S.C. § 5904(c)(1) (requiring that an attorney or agent be retained within one year after a BVA decision) would not apply to the appellant's representation of the veteran before this Court, but would apply to services before the BVA and VARO. In June 1994, the VARO continued its denial of the veteran's claim. However, the BVA granted the veteran secondary service connection for his back disability in December 1994. In January 1995, the VARO evaluated the veteran's back disability as 20% disabling. The VARO noted: "The veteran will be scheduled for an immediate VA orthopedic examination in order to determine if this evaluation should be continued or if a higher evaluation is warranted for his service-connected disability." In May 1995, the veteran, through the appellant, filed a Notice of Disagreement (NOD).

In June 1995, the BVA determined that the appellant was entitled to direct payment from VA of 20% of the past-due benefits owed to the veteran for the period from February 1988 to January 1995, for legal services rendered in connection with the veteran's claim for secondary service connection of his back disability. In August 1995, the veteran received a Statement of the Case that continued the 20% disability rating, but reiterated that his rating would be reconsidered after the scheduled orthopedic examination report was reviewed. The veteran filed a substantive appeal to the Board in October 1995.

In February 1996, the VARO awarded the veteran a 40% disability rating for his back disability effective in January 1988, the date of the veteran's original applica-

tion for secondary service connection of his back disability. The veteran was also awarded a TDIU rating effective May 26, 1992. The VARO noted that the effective date for the TDIU award was based on the date of the veteran's claim for entitlement to a TDIU rating. However, the VARO also noted under "EVIDENCE" that the veteran's application for increased compensation based on unemployability was received in September 1994. There is no evidence in the record on appeal of the filing of an express TDIU claim in May 1992 or September 1994. In March 1996, the VARO informed the veteran of the above award. The VARO also stated that the award was considered a full grant of the benefits sought on appeal and withdrew the veteran's appeal. At that time, the VARO also informed the veteran that 20% of his past-due benefits awarded were being withheld pending a Board decision to determine whether the attorney fees were payable directly from VA to his attorney, the appellant. In June 1996, the veteran submitted a letter to the VARO stating that he had no additional arguments and that VA should "[p]lease honor attorney fee agreement." Subsequently, the matter was forwarded to the BVA for a decision regarding whether the Secretary was obliged to pay any amount of the past-due benefits to the appellant.

The BVA concluded: "The attorney [was] not eligible to charge a fee for services before VA in connection with the veteran's claim for an increased rating for a back disability or a [TDIU rating]." The Board reasoned that because it had never issued a final decision regarding the issues of an increased rating for the veteran's back condition or a TDIU rating, the appellant was not entitled to charge a fee for services rendered before VA in connection with those claims. The Board stated that the grant of a 40% disability rating was not a continuation of the 1994 decision of the Board that had granted service connection for the back disability and thus approved payment to the appellant of only 20% of the back-due benefits based on the

20% rating awarded for the veteran's back disability in January 1995.

The appellant subsequently submitted a timely Notice of Appeal to this Court. On October 8, 1998, the Court heard oral arguments in this matter. Based on the parties' arguments, the Court ordered supplemental briefing on the following issue: "The extent to which eligibility for a TDIU [rating] may have been an inchoate issue, in terms of 38 U.S.C. § 5904(c), (d), in the 1990 BVA decision." Both parties filed supplemental briefing. In the appellant's brief, he argued that a claim for a TDIU rating was inchoate in the Board's 1990 denial of the veteran's claim for increased compensation and for secondary service connection because the TDIU issue was dependent on the veteran's success on those claims. The Secretary on the other hand, argued that a claim for a TDIU rating was a separate and distinct claim that must be raised by the veteran before the Secretary or the Board. The Secretary further argued that the veteran had not filed an NOD prior to the 1990 BVA decision as to the Secretary's failure to consider the TDIU issue. The Secretary, therefore, asserted that the TDIU claim was not an inchoate issue in the 1990 BVA decision.

## II. ANALYSIS

Section 5904(c)(1) and (2) and (d) of title 38, U.S.Code, provides:

(c)(1) Except as provided in paragraph (3), in connection with a proceeding before the Department with respect to benefits under laws administered by the Secretary, a fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided before the date on which the Board of Veterans' Appeals first makes a final decision in the case. Such a fee may be charged, allowed, or paid in the case of services provided after such date only if an agent or attorney is retained with respect to such case before the end

of the one-year period beginning on that date. The limitation in the preceding sentence does not apply to services provided with respect to proceedings before a court.

(2) A person who, acting as agent or attorney in a case referred to in paragraph (1) of this subsection, represents a person before the Department or the Board of Veterans' Appeals after the Board first makes a final decision in the case shall file a copy of any fee agreement between them with the Board at such time as may be specified by the Board. The Board, upon its own motion or the request of either party, may review such a fee agreement and may order a reduction in the fee called for in the agreement if the Board finds that the fee is excessive or unreasonable. A finding or order of the Board under the preceding sentence may be reviewed by the Court of Appeals for Veterans Claims under section 7263(d) of this title.

. . . .

(d)(1) When a claimant and an attorney have entered into a fee agreement described in paragraph (2) of this subsection, the total fee payable to the attorney may not exceed 20 percent of the total amount of any past-due benefits awarded on the basis of the claim.

(2)(A) A fee agreement referred to in paragraph (1) is one under which the total amount of the fee payable to the attorney—

(i) is to be paid to the attorney by the Secretary directly from any past-due benefits awarded on the basis of the claim; and

(ii) is contingent on whether or not the matter is resolved in a manner favorable to the claimant.

(B) For purposes of subparagraph (A) of this paragraph, a claim shall be considered to have been resolved in a manner favorable to the claimant if all or any part of the relief sought is granted.

(3) To the extent that past-due benefits are awarded in any proceeding before the Secretary, the Board of Veterans' Appeals, or the United States Court of Appeals for Veterans Claims, the Secretary may direct that payment of any attorneys' fee under a fee arrangement described in paragraph (1) of this subsection be made out of such past-due benefits. In no event may the Secretary withhold for the purpose of such payment any portion of benefits payable for a period after the date of the final decision of the Secretary, the Board of Veterans' Appeals, or Court of Appeals for Veterans Claims making (or ordering the making of) the award.

38 U.S.C. § 5904(c)(1), (2), (d).

### A. Representation before VA and the BVA

▪ Under section 5904(c), an attorney or agent may charge a fee for services provided to a VA claimant in a proceeding before the BVA or VA provided that (1) the Board has made a final decision regarding the issue or issues involved, (2) the NOD preceding the BVA decision was filed on or after November 18, 1988, and (3) the related attorney-client relationship was entered into within one year after the BVA's first final decision involving the issue or issues in the current claim. *See* 38 U.S.C. § 5904(c)(1); 38 C.F.R § 20.609(c)(1) (1998); *In re Fee Agreement of Smith,* 4 Vet.App. 487, 490 (1993), *vacated on other grounds sub nom. In re Wick,* 40 F.3d 367 (Fed.Cir.1994); *see also In re Fee Agreement of Stanley,* 10 Vet.App. 104, 108 (1997) (upholding the Secretary's interpretation that the term *case* in section 5904(c)(1) involves only those issues decided by the Board). A decision of the Board is final on the date stamped on the face of the decision unless the Chairman orders reconsideration. *See* 38 U.S.C. §§ 7102(a), 7103; 38 C.F.R. § 20.1100 (1998).

▪ In this matter, the appellant entered into a fee agreement with the veteran in July 1991, more than one year after

the Board's May 1990 denial of the veteran's claims for an increased rating for his service-connected knee condition and for secondary service connection of his back condition. Because Mr. Mason was not retained within one year after the May 1990 BVA decision, he is not eligible to charge a fee for services, provided in a proceeding before the Board or VA, regarding the issues involved in the May 1990 BVA decision. Charging attorney fees for services related to those issues, after having provided representation before this Court, will be discussed in part II, B, *infra*, of the Court's opinion.

The Court recognizes that the Board, in a June 1995 decision, found (incorrectly) that the appellant had been retained within one year after the Board's May 1990 decision. In the decision currently on appeal, the Board passed on deciding that question, but did find that the fee agreement had been entered into in July 1991. This Court is not bound by the Board's 1995 determination if the conclusion at that stage of the fee-eligibility litigation was clearly erroneous. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (holding that a court is not bound by a lower tribunal's decision under the law of the case doctrine); *see also J.E.T.S, Inc. v. United States*, 838 F.2d 1196, 1199 (Fed.Cir.1988) (holding that the court is not bound by the law of the case where an earlier decision of the U.S. Armed Services Board of Contract Appeals was clearly erroneous). In the current decision on appeal and in the June 1995 decision, the Board found that the appellant and the veteran had entered into a fee agreement in July 1991. Therefore, the appellant was not retained within one year after the 1990 BVA decision, the BVA's 1995 determination to the contrary was clearly erroneous, and the appellant is not eligible to charge a fee for services before the Board or VA relating to the current matter on appeal.

The appellant argues that the December 1994 BVA decision that granted secondary service connection for the veteran's back condition was a final adverse BVA decision with respect to both the increased disability rating and the TDIU rating awarded in February 1996. The December 1994 BVA decision was a final BVA decision on the issue of secondary service connection; however, it was not the first final BVA decision on the issue. Section 5904(c)(1) states that an attorney must be retained within one year after "the date on which the [BVA] *first* makes a final decision in the case." 38 U.S.C. § 5904(c)(1) (emphasis added). We have held that the Secretary's regulations define the term *case* to mean the issue or issues involved in the BVA decision. *See* 38 C.F.R. § 20.609(c)(1) (1998); *In re Stanley, supra.* The 1990 BVA decision was the first final BVA decision rendered with respect to the issue of secondary service connection. Therefore, retention of Mr. Mason within one year after the BVA's 1994 decision, which involved the same issue, did not satisfy the one-year limitation under section 5904(c)(1) for retaining counsel to represent him before VA or the BVA on the secondary service connection issue. Because there has never been a final BVA decision with respect to degree of disability or a TDIU rating, the appellant could not charge a fee for representing the veteran before VA or the BVA on those issues.

In the alternative, the appellant argues that his services provided before the Board and VA, after this Court remanded the case to the Board, were a continuation of proceedings before this Court, and that, therefore, the requirements under section 5904(c)(1) were inapplicable. He cites no authority to support his contention. "The Court … does not have the authority to retain general and continuing jurisdiction over a decision remanded to the BVA for a new adjudication." *Cleary v. Brown*, 8 Vet.App. 305, 307 (1995). Once the Court remands a matter to the Board, unless jurisdiction is specifically retained, a subsequent decision is a new decision by the

Board that requires the filing of a Notice of Appeal with the Court. *See id.* Therefore, in general, after a remand is issued by this Court, proceedings at the VA level are not a continuation of proceedings before this Court so as to be exempt from the section 5904(c)(1) limitations on charging attorney fees.

For the preceding reasons, the appellant was not entitled to charge attorney fees for his services rendered before the BVA or VA with respect to secondary service connection for the veteran's back disability or for TDIU. Therefore, the Board was correct, although not for the reasons it stated, in denying the appellant entitlement to direct payment from the Secretary for attorney fees for such representation as to the increased rating and a TDIU rating. However, as will be explained below, an attorney is always entitled to charge a fee for representation on matters before this Court, and may be entitled to direct payment from the Secretary from past-due benefits awarded as a result of such representation.

B. Representation before this Court

Section 5904(c)(1) expressly states that the one-year-retention limitation placed on charging attorney fees for services related to a proceeding before the BVA or VA is not applicable to representation before this Court. An attorney may generally charge a fee for any services provided for representation before this Court. In fact, under certain circumstances, such as seeking a writ of mandamus, there does not need to be a final Board decision in order for this Court to have jurisdiction to act in a fee-agreement dispute. *See Cox v. West,* 149 F.3d 1360, 1365–66 (Fed.Cir.1998).

Section 5904(d) authorizes the Secretary to pay directly to an attorney 20% of "the total amount of any past-due benefits awarded to a veteran *on the basis of the claim*" where the veteran and the attorney entered into a qualifying fee agreement for representation before this Court. (Emphasis added.) A qualifying fee agreement must specify that the total fee payable under the agreement (1) may not exceed 20% of the past-due benefits, (2) is contingent on a favorable resolution of the matter, and (3) will be paid directly to the attorney by the Secretary from the past-due benefits awarded on the basis of the underlying claim. *See* 38 U.S.C. § 5904(d)(1), (2). With respect to the Secretary's obligation to withhold and pay attorney fees, the Secretary has promulgated 38 C.F.R. § 20.609(h) (1998), which states the following:

(1) Subject to the requirements of the other paragraphs of this section, ... the claimant or appellant and an attorney-at-law may enter into a fee agreement providing that payment for the services of the attorney-at-law will be made directly to the attorney-at-law by [VA] out of any past-due benefits awarded *as a result of a successful appeal* to the [BVA] or an appellate court or as a result of a reopened claim before [VA] following a prior denial of such benefit by the [BVA] or an appellate court....

. . . .

(3) For purposes of this paragraph, "past-due benefits" means a nonrecurring payment *resulting from a benefit, or benefits, granted on appeal* or awarded on the basis of a claim reopened after a denial by the [BVA] or the lump[-]sum payment which represents the total amount of recurring cash payments which accrued between the effective date of the award, as determined by applicable laws and regulations, and the date of the grant of the benefit by the [VARO], the [BVA], or an appellate court.

(i) When the benefit granted on appeal ... is *service connection* for a disability, the "past-due benefits" will be *based on the initial disability rating* assigned by the [VARO] following the award of service connection. The sum will equal the payments from the effective date of the award to the date of the initial disability rating decision.

(Emphasis added.); *see also Aronson v. Derwinski*, 3 Vet.App. 162, 163 (1992) (holding that the Secretary had no discretion under the language of 38 C.F.R. § 20.609(h)(1) to deny payment where the fee agreement met the regulatory requirements). Section 20.609(h)(3)(i) also provides that if an increased rating is granted based on an appeal of the initial disability rating, and the attorney represented the claimant, the attorney is entitled to a supplemental payment from the award "to the extent that the increased amount of disability is found to have existed between the initial effective date of the award ... and the date of the rating action implementing the appellate decision granting the increase."

■ The Secretary's regulatory interpretation of section 5904(d) clearly states that any past-due benefits awarded "as a result of a successful appeal to the [BVA] or an appellate court" are subject to the 20% direct payment. *See* 38 C.F.R. 20.609(h)(1). Therefore, where an attorney successfully represents a VA claimant before this Court and has filed a qualifying attorney-client fee agreement which directs payment by the Secretary from an award of past-due benefits awarded on the basis of the claim filed with VA, the Secretary is obligated to pay directly to the attorney 20% of the past-due benefits awarded on the basis of the claim or application for benefits *underlying the issues successfully appealed to this Court.* That payment could be entirely dependent on the attorney's services before this Court, depending on the fee agreement, and, under the express terms of section 5904(c)(1), would not be subject to the limitations in section 5904(c)(1). Providing further services before the Board and VA would, of course, be in the best interest of the attorney to assist the claimant in securing any award of past-due benefits; however, the attorney's continued representation pursuant to a qualified fee agreement does not necessarily generate an additional fee, and the attorney is not required to satisfy the section 5904(c)(1) requirements in connection with any such representation. If the attorney charges any fee beyond the 20% contingency fee to be paid directly by the Secretary, for representation before the Board or VA on the issues successfully appealed to the Court, the amended fee agreement would violate the 20% contingency-fee-limitation under section 5904(d). *See In re Fee Agreement of Smith*, 1 Vet. App. 492, 509–10 (1991) (Steinberg, J., concurring). Pursuant to a qualifying fee agreement, an attorney may not seek a *total* fee of more than 20% of the past-due benefits awarded on the basis of the underlying claim for his representation before the Court, the Board, and VA. *See* 38 U.S.C. § 5904(d)(1).

■ The Board failed to analyze whether the appellant's successful representation of the veteran before this Court created an entitlement to direct payment by the Secretary of 20% of the past-due benefits awarded on the basis of the claim underlying the Court's decision. The Board has a duty to apply all relevant statutory and regulatory provisions. *See Browder v. Derwinski*, 1 Vet.App. 204, 205 (1991). The appellant represented the veteran in a successful appeal wherein the Court vacated the Board's 1990 denial of the veteran's January 1988 claim for secondary service connection and remanded that matter. Therefore, if the appellant's representation was pursuant to a qualifying fee agreement, 20% of any award of past-due benefits granted on the basis of the 1988 claim would be payable to the appellant. Based on the facts of this case, the appellant's amended fee agreement filed in 1993 was a qualifying fee agreement. By regulation, the appellant was entitled to a payment of 20% of past-due benefits based on the initial rating of the veteran's claim. The *initial rating includes the ultimate rating granted by VA after a remand by this Court and prior to the time when a decision on the issue by VA or the BVA becomes final. See* 38 C.F.R. § 20.609(h)(3)(i). In this matter, the ultimate schedular rating granted the veteran based on his 1988

claim was a 40% disability rating. That is the final initial disability rating upon which the appellant's direct payment of attorney fees must be based. *See id.* Accordingly, the Court will reverse the Board decision as to the payment of the appellant's attorney fee in connection with the 40% award and direct the BVA to provide for payment of the 20% contingency fee based on that award.

The appellant also seeks direct payment from the Secretary of 20% of the award of the TDIU benefits granted the veteran. Eligibility for TDIU is a rating question dependent on a grant of service connection. *See* 38 C.F.R. § 4.16. While the degree of disability under the VA rating schedule is based on the actual symptomatology of the disability and how it affects employability, a TDIU rating is based on unemployability caused by one or more service-connected disabilities. Therefore, while a claim for service connection of a disability always raises the issue of degree of disability, the issue of TDIU must be reasonably raised based on the submissions of the claimant or the evidence of record. *See Norris v. West,* 12 Vet.App. 413, 420–21 (1999) (holding that a rating-increase claim includes a TDIU claim where veteran meets the section 4.16(a) schedular requirements and the record on appeal includes evidence of unemployability based on a service-connected disability or disabilities), *motion for full Court decision denied* (July 29, 1999); *EF v. Derwinski,* 1 Vet.App. 324 (1991). Where the issue is reasonably raised, VA or the BVA is obligated to adjudicate the issue. *See Norris, supra; Akles v. Derwinski,* 1 Vet. App. 118 (1991). Because the issue of eligibility for TDIU does not become relevant until after service connection is granted, the issue, if previously raised, is inchoate and would remain as an underlying issue until a final decision on the question of service connection is issued. Eligibility for direct payment of attorneys fees would depend on whether the claim underlying the appeal to this Court included the TDIU issue. If eligibility for a TDIU rating was reasonably raised by the evidence of record as part of the underlying claim for disability compensation before VA, then the TDIU rating is part of the "initial rating" and, pursuant to 38 C.F.R. § 20.609(h)(3)(i), the appellant would be entitled to payment by the Secretary of 20% of such award. *See Norris, supra.*

However, whether such issue was reasonably raised is not clear from the record. The effective date for the TDIU award is May 1992, which implies that the claim for TDIU was reasonably raised at that time. *See In re Fee Agreement of Cox,* 11 Vet. App. 158, 163 (1998) (holding that the effective date of an award of secondary service connection was evidence that the Secretary considered the claim before the VARO at that time). There is evidence of record that the appellant was unemployed for seven years prior to his claim in 1988. However, unemployment and unemployability are two related but quite different concepts. Also, the notation about unemployment, in a March 1988 medical report, does not indicate that the appellant's unemployment was due to his service-connected conditions. Nevertheless, because the record on appeal contains no evidence concerning the TDIU adjudication and is completely inadequate to review the issue, the Court will remand the issue of whether eligibility for a TDIU rating was reasonably raised prior to the 1990 Board decision and, therefore, was part of the claim underlying the Court's 1993 remand decision. *See Norris, supra.*

Finally, as to attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, the Court notes that any contingency fee that the appellant would collect, as a result of this appeal, for representation in this Court on the underlying claim must be offset by any EAJA fees that he has already collected *based on the Court's January 1993 remand of the case. See Vosefski v. Brown,* No. 90–920 (April 12, 1995, Court order granting parties' joint April 11, 1995, motion to dismiss appellant's May 10, 1993, EAJA application);

section 506(c) of the Federal Courts Administration Act (FCAA), Pub.L. No. 102–572, § 506(c), 106, Stat. 4506, 4513 (1992) (where the claimant's attorney receives fees for same work under both 38 U.S.C. § 5904 and section 2412(d), the claimant's attorney must refund to the claimant the amount of the smaller fee); *Curtis v. Brown,* 8 Vet.App. 104, 108 (1995); *see also Wingo v. West,* 11 Vet.App. 307, 312–13 (1998); *Gaines v. West,* 11 Vet.App. 113, 114 (1998); *Shaw v. Gober,* 10 Vet. App. 498, 503–04 (1997). That is, it was the "same work" here under FCAA § 506 that produced both the EAJA award and the back-due-benefits award.

### III. CONCLUSION

The decision of the Board, with respect to the denial of the appellant's eligibility for attorney fees from the past-due benefits awarded to the veteran for the 40% disability rating for secondary service connection of his back condition is REVERSED and the matter REMANDED for the Board to provide for the payment to the appellant of the 20% contingency fee, out of past-due benefits, based on his representation in the Court on the secondary service connection claim. As to the TDIU award, the BVA decision is VACATED and the matter REMANDED for readjudication.