**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 07-1617

Mark R. Lippman, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

Sammie C. Swinger, Intervenor.

On Appeal from the Board of Veterans' Appeals

(Argued May 14, 2009                     Decided September 22, 2009)

*Mark R. Lippman*, *pro se*.

*Kenneth A. Walsh*, Deputy Assistant General Counsel, with whom *Paul J. Hutter*, General Counsel; and *R. Randall Campbell*, Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

*Jennifer A. Zajac*, of Oceanside, California, was on the brief for Sammie C. Swinger as intervenor.

Before KASOLD, HAGEL, and LANCE, *Judges*.

HAGEL, *Judge*: Attorney Mark R. Lippman, who is self-represented, appeals a June 11, 2007, Board of Veterans' Appeals (Board) decision in which the Board granted entitlement to attorney fees for past-due benefits in the amount of $9,123.28, but denied entitlement to attorney fees for past-due benefits in the amount of $7,525.40. Record (R.) at 1-7. On July 23, 2009, the Court issued a decision vacating and remanding, in part, and affirming, in part, the Board's June 2007 decision. On August 18, 2009, Mr. Lippman filed a motion to modify that decision by deleting the portion of the decision under the heading "Final Matter." On September 10, 2009, the Court issued an order denying Mr. Lippman's motion. Upon reconsideration, however, the Court will withdraw that order and grant Mr. Lippman's motion, in part. Accordingly, the Court will withdraw its July

23, 2009, decision and issue this decision in its stead. For the reasons that follow, the Court will vacate that portion of the June 2007 Board decision that denied entitlement to attorney fees in the amount of $7,525.40 and remand the matter for readjudication consistent with this decision. The remainder of the Board decision will be affirmed.

## I. FACTS

This case presents a matter of first impression to the Court: When an attorney is discharged by a claimant prior to the conclusion of an appeal taken from the initial disability rating assigned, what is the proper framework for determining reasonable attorney fees under a qualifying fee agreement?

The facts in this matter are not in dispute. U.S. Army veteran Sammy C. Swinger applied for VA benefits for post-traumatic stress disorder in December 1992. His claim was initially denied by a VA regional office in April 1994, and the denial was ultimately confirmed by the Board in October 1999. The Board decision also denied several other claims as not well-grounded.[1]

In May 2000, Mr. Lippman and Mr. Swinger entered into an "attorney-client fee contract" that provided, relevant to the matter on appeal:

> 2. **SCOPE AND DUTIES.** Client hires Attorney to provide pro bono legal services in connection with **appeal or petition to U.S. Court of Veterans Appeals**[2] under the terms and conditions set forth in the Equal Access to Justice Act [28 U.S.C. § 2412 (EAJA)]. Attorney shall provide the following services: **All services necessary to prosecute appeal or petition to the U.S. Court of Appeals for Veterans Claims.** . . . In the event of a court-ordered remand, this agreement shall include representation of the veteran by the Attorney at both the Board of Veterans' Appeals as well as any Regional Office of the Department of Veterans Affairs, based upon the contingent fee arrangement contained herein. . . .

---

[1] The law in effect in October 1999 provided that claims must be "well grounded" in order to invoke VA's duty to assist in their development and proceed to adjudication. *See* 38 U.S.C. § 5107 (amended 2000). The Veterans Claims Assistance Act of 2000, Pub.L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000), amended § 5107 to eliminate the well-grounded requirement. *See Luyster v. Gober*, 14 Vet.App. 186 (2000) (per curiam order).

[2] The name of the Court was changed from "United States Court of Veterans Appeals" to "United States Court of Appeals for Veterans Claims" in 1998 by Pub. L. 105-368, codified at 38 U.S.C. § 7251, effective March 1, 1999.

3. **CONTINGENT FEE (VETERANS ADMINISTRATION CASES).**
Client agrees to pay a fee equal to twenty percent (20%) of the total amount of any past-due benefits awarded to Client . . . on the basis of Client's claim following a remand order from the United States Court of Veterans Appeals [sic], and not in connection with the pro bono appeal to the U.S. Court of Veterans Appeals [sic]. It is understood that this Contingent Fee is to be withheld by the VA and paid directly to the attorney.

R. at 436-37.[3]  In November 2000, the Veterans Claims Assistance Act went into effect, requiring VA to provide particular types of notice to claimants seeking disability benefits.

Mr. Lippman represented Mr. Swinger before this Court in the matter of *Swinger v. Principi*, No. 99-1917.  On Mr. Swinger's behalf, Mr. Lippman argued for vacatur and remand of the Board's October 1999 decision regarding his post-traumatic stress disorder claim because VA had failed to discharge its duty to assist, failed to request or advise Mr. Swinger to obtain documents relevant to his claim, and failed to properly apply the legal standard for verification of in-service stressors. *Swinger v. Principi*, 17 Vet.App. 508 (table), 2001 WL 218866 at *1 (Feb. 23, 2001).  Mr. Lippman also argued that the Board's decision on Mr. Swinger's other claims should be vacated and remanded for compliance with the then-newly enacted Veterans Claims Assistance Act.  In January 2001, the Secretary filed a motion to vacate the Board's decision and remand the matters for readjudication in light of the Veterans Claims Assistance Act.  Mr. Swinger filed a response opposing the Secretary's motion, arguing that it was a "preemptive maneuver" to cut off Mr. Swinger's potential right to fees and expenses under the EAJA.  *Id.*  In February 2001, the Court granted the Secretary's motion, vacated the Board's October 1999 decision, and remanded Mr. Swinger's claim for benefits for post-traumatic stress disorder.  Mr. Lippman subsequently filed an EAJA application on behalf of Mr. Swinger that was denied by the Court because the Court's February 2001 remand was not predicated on administrative error.  *Swinger v. Principi*, 18 Vet.App. 20 (table), 2001 WL 1743139 (Nov. 28, 2001).

---

[3] The Court notes that Mr. Lippman's description of the fee agreement in his brief simply states that he and Mr. Swinger "entered into an attorney fee agreement, allowing for twenty (20) percent contingent fee of all past-due benefits awarded on the basis of the claim."  Appellant's Brief (Br.) at 2.

In February 2002, the Board remanded the claim to the regional office for development and readjudication. In June 2002, VA received notice from Mr. Swinger stating that he had discharged Mr. Lippman as his attorney and that he would proceed pro se.

In January 2005, the regional office issued a rating decision granting Mr. Swinger VA benefits for post-traumatic stress disorder and assigning a 30% disability rating from December 10, 1992 (the date of the initial claim for benefits), a 100% disability rating from February 22, 1995, to June 1, 1995, and a 30% disability rating thereafter.[4] In February 2005, the regional office determined that Mr. Lippman met the requirements of 38 U.S.C. § 5904 and 38 C.F.R. § 20.609,[5] and was therefore entitled to $9,123.28 in attorney fees, 20% of the total past-due benefits awarded.[6] Later that month, Mr. Swinger notified VA of his objection to the award of attorney fees to Mr. Lippman. In March 2005, the regional office issued a Statement of the Case confirming the entitlement of Mr. Lippman to payment of attorney fees in the amount of $9,123.28. In April 2005, Mr. Swinger appealed that decision to the Board.

In March 2005, Mr. Swinger, acting pro se, filed a Notice of Disagreement with the initial disability rating assigned for post-traumatic stress disorder.[7] R. at 842 ("[The] regional office . . . failed to grant full or maximum benefits."). In September 2005, the regional office awarded an increased disability rating of 50%, effective June 1, 1995. As a result of this award, the regional office notified Mr. Swinger in November 2005 that Mr. Lippman was entitled to a supplemental payment of $7,525.40 in attorney fees, representing 20% of the past-due benefits awarded to Mr. Swinger as a result of the September 2005 regional office decision, and that the amount would be paid directly to Mr. Lippman. In February 2006, VA notified Mr. Swinger that it had received his Notice of Disagreement regarding the award of supplemental attorney fees to Mr. Lippman. Later

---

[4] The Court notes that this rating decision lists Mr. Lippman as Mr. Swinger's representative. R. at 823.

[5] This regulation has been recodified at 38 C.F.R. § 14.636 (2008), and the portion of the regulation at issue in this matter appears, substantively unchanged, at § 14.636(h)(3)(i). The Court will therefore refer to the regulation under its new designation except when discussing VA decisions that pre-date the recodification.

[6] The notification to Mr. Lippman and Mr. Swinger of the attorney fee payment indicated that VA had received Mr. Swinger's June 2002 "request to revoke" Mr. Lippman's representation. R. at 830, 832.

[7] The Court notes that VA's response to Mr. Swinger's Notice of Disagreement indicates that he had "designated Mark R. Lippman, Attorney-at-Law, to represent" him in presenting his claim to VA. R. at 855.

4

that month, the regional office issued a Statement of the Case confirming the entitlement of Mr. Lippman to payment of attorney fees in the amount of $7,525.40. The regional office acknowledged that Mr. Swinger had dismissed Mr. Lippman in June 2002, but found that Mr. Lippman "did assist [Mr. Swinger] in his appeal," and was therefore entitled to payment. R. at 956. Mr. Swinger appealed to the Board.

In June 2007, the Board issued the decision on appeal granting entitlement to attorney fees for past-due benefits in the amount of $9,123.28, but denying entitlement to attorney fees for past-due benefits in the amount of $7,525.40. The Board determined that Mr. Lippman "had no involvement in and provided no representative assistance to [Mr. Swinger] in connection with [his] appeal from the initial evaluations assigned" in the January 2005 regional office decision, and that, therefore, the requirements of 38 U.S.C. § 5904 and 38 C.F.R. § 20.609 had not been met and Mr. Lippman was not entitled to fees resulting from the September 2005 regional office decision that increased Mr. Swinger's disability rating from 30% to 50%. R. at 3. The Board reached this conclusion by applying 38 C.F.R. § 20.609(h)(3)(i) (2006), which specifically provided that where a higher disability rating is granted as the result of an appeal of an initial disability rating, an attorney is entitled to supplemental payment so long as the attorney "represents the claimant or appellant in that phase of the claim." 38 C.F.R. § 20.609(h)(3)(i) (2006); R. at 6.

On June 14, 2007, Mr. Lippman filed a Notice of Appeal in this matter. The proof of service submitted with the Notice of Appeal indicated that notice was served only on the Secretary, not on Mr. Swinger, who was a party to the June 2007 Board decision. On June 20, 2007, Notice of Docketing was issued only to Mr. Lippman and the Secretary. In September 2007, the Secretary submitted a copy of a September 20, 2007, letter from counsel for the Secretary to Mr. Swinger, advising Mr. Swinger that Mr. Lippman had appealed the June 2007 Board decision. The letter included copies of Mr. Lippman's Notice of Appeal and the Notice of Docketing issued by the Clerk of the Court (Clerk). The letter informed Mr. Swinger that he had the right to intervene in this matter by serving on all parties and filing with the Court notice to intervene. The letter noted that Mr. Swinger's right to intervene required the service and filing of notice to intervene within 60 days of the Notice of Docketing, and that the notice to intervene should have been filed by August 20, 2007. The letter continued: "Although you are unable to meet the August 20, 2007, deadline, the Court may

5

accept your *Notice of Intent to Intervene* if it is filed reasonably soon." Sept. 20, 2007, Correspondence at 1. On October 1, 2007, the Court received notice to intervene from Mr. Swinger. On October 25, 2007, the Clerk issued an order directing that the caption of this case be changed to reflect Mr. Swinger's status as intervenor. On March 4, 2009, the single judge to whom this matter was initially assigned found that Mr. Swinger's motion to intervene should have been referred to chambers due to the timing of the request, found that extraordinary circumstances warranted granting Mr. Swinger's request to intervene, and directed him to file a brief within 60 days.

In February 2009, the Court solicited supplemental memoranda of law from the parties regarding the applicability of *Scates v. Principi*, 282 F.3d 1362 (Fed. Cir. 2002), to the matter on appeal. *Scates* held:

> [A]n attorney with a contingent fee contract for payment of twenty percent of accrued veterans benefits awarded, discharged by the client before the case is completed, is not automatically entitled to the full twenty percent fee. He may receive only a fee that fairly and accurately reflects his contribution to and responsibility for the benefits awarded.

282 F.3d at 1366. Both Mr. Lippman and the Secretary responded, and their arguments are summarized below. On March 13, 2009, this matter was referred to the panel, and on May 14, 2009, the Court heard oral argument. Counsel for Mr. Swinger filed her appearance on his behalf on May 1, 2009, and filed a brief on May 4, 2009.

On appeal, in his brief, Mr. Lippman argued that 38 C.F.R. § 14.636(h)(3)(i) is inconsistent with 38 U.S.C. § 5904(d)(1) to the extent that it requires continued representation of a claimant following a decision granting an initial disability rating. In particular, Mr. Lippman contended that the Secretary exceeded his rulemaking authority when he "engraft[ed] a continued attorney representation requirement onto" section 5904(d)(1). Appellant's Br. at 8. In his supplemental memorandum, Mr. Lippman argued that *Scates* is applicable in this case and that the Board committed remandable error by not considering the rule of that case. In particular, Mr. Lippman asserted that *Scates* sets forth a framework for assessing the contributions of an attorney and his entitlement to fees in cases where he was discharged prior to the completion of the case, and that *Scates* cannot be reconciled with § 14.636(h)(3)(i). Appellant's Supplemental (Supp.) Memorandum (Mem.) at 4-5. Mr. Lippman argued that he was entitled to recover fees under the *Scates* framework

due to the amount of time he expended on the matter and due to the fact that it was his work on "the most difficult and important issue" of Mr. Swinger's claim for benefits for post-traumatic stress disorder, the question of corroboration of in-service stressors, that resulted in the increased disability rating assigned. Appellant's Supp. Mem. at 5-6.

In response, in his brief, the Secretary argued that § 14.636(h)(3)(i) permissibly fills a gap left by Congress when it enacted section 5904. Specifically, the Secretary contended that Congress did not address the distinct situation presented by the facts of this case, namely, whether an attorney is entitled to payment of supplemental fees where the claimant has terminated the attorney-client relationship and has obtained additional benefits while acting pro se. Secretary's Br. at 4-5. The Secretary asserted that his interpretation of section 5904, as expressed in § 14.636, is reasonable and based on a permissible construction of the statute. *See generally* Secretary's Br. at 4-7; *Chevron U.S.A., Inc. v. Natural Res. Def. Counsel, Inc.*, 467 U.S. 837, 842-43 (1984). In his supplemental memorandum, the Secretary argued that the Board did not need to engage in a *Scates* analysis because Mr. Lippman provided no representation at the regional office in the successful appeal of the disability rating assigned. Secretary's Supp. Mem. at 4-7. In other words, according to the Secretary, *Scates* is applicable only where an attorney provided some representation in the appeal but was discharged prior to benefits actually being awarded. At oral argument, the Secretary's argument remained consistent with his brief and supplemental memorandum.

For his part, Mr. Swinger, through counsel, argued in a brief that the Secretary's interpretation of section 5904(d), as embodied in § 14.636(h)(3)(i), was a reasonable interpretation of the statutory language and congressional intent, and therefore the Board had not erred in denying Mr. Lippman entitlement to attorney fees based on the past-due benefits paid as a result of the higher initial disability rating awarded. Intervenor's Br. at 4-9. With respect to *Scates*, Mr. Swinger argued that the decision is distinguishable because in that case, the claimant fired his attorney prior to the regional office issuing an initial decision on his claim, rather than prior to an appeal of the initial disability rating assigned. Intervenor's Br. at 10-11. In the alternative, Mr. Swinger contends that, if *Scates* applies, the Board's failure to consider it is harmless error because under the *Scates* criteria, Mr. Lippman would not be entitled to attorney fees. Intervenor's Br. at 11-12.

In response to a June 24, 2009, order of the Court requesting further information, Mr. Swinger stated that he is not claiming entitlement to the $9,123.28 awarded by the Board to Mr. Lippman, and that he believes that amount is "fair for the amount of time provided for [Mr. Lippman's] services." Intervenor's Response at 2.

## II. RELEVANT LAW

The Court finds it useful in this instance to first set forth the statutory and regulatory provisions, as well as the caselaw, relevant to the issues on appeal.

### A. 38 U.S.C. § 5904

Section 5904(a)(5) provides that the Secretary "may prescribe in regulations reasonable restrictions on the amount of fees that an agent or attorney may charge a claimant" for work done before VA, and that a fee that does not exceed 20% of the past-due benefits "awarded on a claim" is presumptively reasonable. Section 5904(c)(3)(A) permits the Secretary, of his own volition or upon a request by a party, to review a fee agreement filed with the Secretary, and to reduce the fee called for in the agreement if the Secretary finds that the fee is "excessive or unreasonable."[8] Section 5904(d)(1) provides that, when a claimant and an attorney have entered into a fee agreement that is filed with the Secretary, the total fee payable to the attorney may not exceed 20% of the total amount of "any past-due benefits awarded on the basis of the claim." Such a fee agreement must be one under which the total amount of the fee payable to the attorney is (1) to be paid to the attorney directly from "any past-due benefits awarded on the basis of the claim," and (2) "is contingent on whether or not the matter is resolved in a manner favorable to the claimant." 38 U.S.C. § 5904(d)(2)(A). A claim is considered to have been "resolved in a manner favorable to the claimant" if "all or any part of the relief sought is granted." 38 U.S.C. § 5904(d)(2)(B).

---

[8] A decision by the Secretary to reduce the fee is reviewable by the Board. 38 U.S.C. § 5904( c)(3)(B). At the time of the September 2005 regional office decision that led to the disputed award of $7,525.40 in attorney fees to Mr. Lippman, section 5904(c)(2) provided that the Board could, on its own motion or the request of either party, review the fee agreement and reduce the fee if the Board found it to be excessive or unreasonable. 38 U.S.C. § 5904(c)(2) (2005). A decision by the Board reducing the fee was, as now, reviewable by this Court. *Id.*

8

B. 38 C.F.R. § 14.636(h)

Subsection (h) of § 14.636 is entitled "Payment of fees by [VA] directly to an agent or attorney from past due benefits," and permits a claimant to enter into a fee agreement with an attorney that provides that payment for the attorney's services will be made to the attorney directly by VA out of any past-due benefits "awarded in any proceeding" before VA or this Court. 38 C.F.R. § 14.636(h)(1) (2008).[9] The fee agreement will be honored by VA only if (1) the total fee payable, excluding expenses, does not exceed 20% of the past-due benefits awarded, (2) the amount of the fee is contingent on whether or not the claim is resolved in a manner favorable to the claimant, and (3) the award of past-due benefits results in a cash payment to the claimant from which the fee may be deducted. 38 C.F.R. § 14.636(h)(1)(i), (ii), (iii). Past-due benefits, for the purposes of this case, means "a nonrecurring payment resulting from a benefit, or benefits, granted on appeal." 38 C.F.R. § 14.636(h)(3). "When the benefit granted on appeal . . . is service connection for a disability, the 'past-due benefits' will be based on the initial disability rating assigned by the agency of original jurisdiction following the award of service connection." 38 C.F.R. § 14.636(h)(3)(i). Where the initial disability rating assigned is appealed and a higher initial disability rating is assigned, the regulation provides that an attorney is entitled to a supplemental payment based upon the increase granted on appeal, "if the . . . attorney represents the claimant . . . in that phase of the claim." *Id.*

C. *Scates v. Principi*

In *Scates*, the United States Court of Appeals for the Federal Circuit (Federal Circuit) considered the case of a discharged attorney (Mason) who sought fees for the representation of his former client before VA. Mason had filed a qualifying fee agreement with VA, but had been discharged by Mr. Scates, who subsequently retained new counsel, prior to VA making an initial decision on the claim. Once VA granted the claimant benefits, the regional office withheld 20% of the past-due benefits awarded while the Board considered Mason's right to a fee. The Board concluded that Mr. Scates's revocation of Mason's authority to represent him did not preclude payment to Mason of otherwise due attorney fees. *Scates*, 282 F.3d at 1364. On appeal to this

_____

[9] The 2007 version of this regulation, § 20.609(h)(1), provided that payment pursuant to a fee agreement of this kind would be made out of any past-due benefits "awarded as a result of a successful appeal to the [Board] or an appellate court or as a result of a reopened claim before [VA] following a prior denial of such benefits by the [Board] or an appellate court." 38 C.F.R. § 20.609(h)(1) (2007).

Court, after a petition for rehearing en banc, the full Court determined that the proper reading of 38 U.S.C. § 5904(c)(2) compelled the conclusion that the Board did not have original jurisdiction to consider any issues pertaining to entitlement to, as opposed to the excessiveness or reasonableness of, attorney fees in direct-payment cases. *See Scates v. Gober*, 14 Vet.App. 62, 64 (2000). The Court therefore vacated and remanded the Board's decision for the matter of entitlement to be considered by the regional office in the first instance.

Mason appealed to the Federal Circuit, arguing that remand was not warranted because only the "'ministerial' act of paying him the withheld money" remained to be done to resolve the fee dispute. *Scates*, 282 F.3d at 1365. The Federal Circuit determined that, when read "in context and in the light of the statutory provisions governing the payment of attorney fees," the fee agreement between Mason and Mr. Scates included an implicit understanding that Mason's right to receive the full 20% of any past-due benefits awarded would only arise if he continued to represent Mr. Scates until the claim was successfully completed. *Id.* Where the attorney-client relationship was terminated prior to the resolution of the claim and Mr. Scates retained substitute counsel, however, the Federal Circuit found that the agreement implied that the original attorney's fees "would be based upon and fairly reflect that lawyer's contribution to the case." *Id.*

In reaching this conclusion, the Federal Circuit stated that 38 U.S.C. § 5904(d)(1) and (2) limit the "total fee payable" to 20% of the past-due benefits awarded, and concluded that each of Mr. Scates's attorneys should be paid a portion of the 20% based on their contributions to his case. *Id.* at 1365-66. As noted above, the Federal Circuit stated:

> [A]n attorney with a contingent fee contract for payment of twenty percent of accrued veterans benefits awarded, discharged by the client before the case is completed, is not automatically entitled to the full twenty percent fee. He may receive only a fee that fairly and accurately reflects his contribution to and responsibility for the benefits awarded.

*Id.* at 1366. In its discussion of jurisdiction, the Federal Circuit stated that "[t]he line between (1) entitlement to and (2) reasonableness and excessiveness of attorney fees may not be as clear and bright as the Veterans Court believed." *Id.* at 1367. However, the Federal Circuit did determine that, on the facts of the case before it, the regional office was the appropriate agency to decide Mason's fee claim, due to the factual matters to be resolved, including the reasons for which Mr. Scates

discharged Mason; how Mason's share, if any, of the 20% of past-due benefits awarded should be calculated; and whether substitute counsel was seeking any legal fees for work performed on the claim. *Id.* at 1368-69.

### III. ANALYSIS

#### A. Statutory Interpretation

The question before the Court is whether 38 C.F.R. § 14.636(h)(3)(i) is consistent with 38 U.S.C. § 5904. As the United States Supreme Court has held, the Court must first determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. In evaluating whether Congress has directly spoken to the question at issue, we begin, as always, with the language of the statute itself. *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993).

Mr. Lippman appeared to argue in his brief that, based on the use of the word "claim" in the phrase "past-due benefits awarded on the basis of the claim" in section 5904(d)(1), section 5904 is textually unambiguous, such that § 14.636(h)(3)(i) is necessarily an inappropriate exercise of the Secretary's ability to promulgate regulations interpreting that statute. The Court disagrees. Even if we assume, as Mr. Lippman argues, that Congress used the word "claim" in section 5904 as it is defined by VA in 38 C.F.R. § 3.1(p) (2009), that is, "a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit," that does not address the particular question at issue here. Here, we are concerned with the right of a discharged attorney to fees from past-due benefits paid to a claimant who discharged the attorney and, while self-represented, successfully appealed the initial disability rating assigned. Mr. Lippman points to, and the Court can find, no language in section 5904 that speaks to this precise question. Accordingly, there is a gap in the statute, and VA may promulgate regulations to fill that gap. *Chevron*, 467 U.S. at 843.

Having determined that Congress left gaps in the statute for VA to fill through regulations, the Court may not

11

simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* (footnotes omitted). Where, as here, "the legislative delegation to [the] agency on a particular question is implicit rather than explicit," the Court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844 (footnote omitted).

The Court is troubled by the portion of § 14.636(h)(3)(i) that requires continued representation of a claimant during the appeal of the initial disability rating assigned to entitle an attorney to supplemental payment from past-due benefits awarded as a result of that appeal. Separating a claim into distinct phases for the purpose of compensation, while a good idea in theory, in practice will, in certain circumstances, result in unfairly depriving an attorney of rightful fees for work done that led to a favorable result for a claimant, a fact the Secretary conceded at oral argument. As Mr. Lippman put it, "An attorney's contribution to the overall recovery in a claim cannot always be measured by what past-due benefits are awarded during distinct phases of a claim." Appellant's Supp. Mem. at 5. The Court agrees.

Consider the following example: On remand from this Court, and then from the Board to the regional office, a represented claimant is awarded service connection, but at a noncompensable level (and therefore no past-due benefits are paid from which the claimant's attorney can draw a fee). The claimant then discharges the attorney and files, pro se, a Notice of Disagreement with the disability rating assigned, but does little or no additional work on the claim (i.e., does not secure or submit additional evidence or make additional argument to the Board, beyond stating that he believes he is entitled to a higher rating).[10] On appeal, the Board determines that the regional office erred and that

---

[10] A Notice of Disagreement is defined as follows:

A written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result will constitute a Notice of Disagreement. While special wording is not required, the Notice of Disagreement must be in terms which can be reasonably construed as disagreement with that determination and a desire for appellate review.

38 C.F.R. § 20.201 (2009). This example is for illustrative purposes only; the Court makes no judgment about the work

12

the claimant is, in fact, entitled to a compensable disability rating (and therefore past-due benefits are paid). Under the current regulation, the attorney would not be paid any fee at all, despite having done all of the work, save filing the Notice of Disagreement, that resulted in a favorable resolution: an ultimately compensable disability rating.[11]

It is certainly a claimant's right to discharge his attorney, but termination of representation does not terminate an attorney's right under a valid contract to collect fees for work performed prior to the termination that resulted in the claim being resolved "in a manner favorable to the claimant." 38 U.S.C. § 5904(d)(2)(B). Because the Secretary's continued representation requirement does not guard against improper deprivation of payment to attorneys for work actually performed, the regulation is unduly restrictive. Accordingly, the Court finds that the continuing representation portion of the regulation is unreasonable and therefore finds it invalid. *Chevron*, 467 U.S. at 844. To be clear, the portion of the regulation to be struck reads, "and if the agent or attorney represents the claimant or appellant in that phase of the claim." 38 C.F.R. § 14.636(h)(3)(i). The Court now turns to the proper framework for determining what fee is reasonably paid by VA where, as here, an attorney is discharged by the claimant after the initial decision on a claim is made, but prior to the appeal of the initial disability rating assigned.[12]

B. Framework for Supplemental Payments to Discharged Attorneys

As an initial matter, we reject out of hand Mr. Lippman's suggestion that the framework should be different for claimants who opt to retain substitute counsel to continue their appeals and claimants who opt to represent themselves on appeal. Mr. Lippman conceded at oral argument that, had Mr. Swinger obtained substitute counsel to file his Notice of Disagreement and continue his appeal after discharging him, Mr. Lippman would not be entitled to the $7,525.40 awarded by the

---

Mr. Swinger may have done on his own behalf after filing his Notice of Disagreement.

[11] The Court notes that an attorney may not charge fees for work done for a claimant prior to the filing of a Notice of Disagreement with the first decision on a claim. *See* 38 U.S.C. § 14.63(c) (2009).

[12] *Scates* clearly governs the situation where an attorney is discharged by a claimant prior to the initial decision on a claim. *Scates*, 262 F.3d at 1365.

regional office as a result of the September 2005 regional office decision.[13]  Mr. Lippman contends, however, that simply because there is no other attorney with a stake in Mr. Swinger's past-due benefits, he is entitled to payment of 20% of the total past-due benefits awarded, despite having done nothing to assist Mr. Swinger with his appeal of the initial disability rating assigned, as he readily admitted at oral argument.  This position is simply unfair to claimants who choose to act on their own behalf after discharging an attorney, and the Court will not entertain it.

Instead, we find that the question here is one of reasonableness, and that the proper analysis where an attorney is discharged after the initial decision on a claim but prior to the appeal of that decision is the same as the analysis in *Scates*–that is, quantum meruit[14]–informed by the factors listed in 38 C.F.R. § 14.636(e), which governs the reasonableness of fees charged generally.  *See Scates*, 282 F.3d at 1366, 1368-69; 38 C.F.R. § 14.636(e) (2009).  We believe the reasoning underlying the Federal Circuit's decision in *Scates* is equally applicable here: The statutory history of the law governing payment of attorney fees reflects "congressional intent to protect veterans benefits from improper diminution by excessive legal fees."  *Scates*, 282 F.3d at 1366 (noting that the 20% contingent fee provided by section 5904 is lower than in other areas of practice, but is offset by the guarantee of collection upon favorable resolution of the claim).  Were we to allow discharged attorneys to collect 20% of all past-due benefits awarded as a result of an appeal of the initial disability rating without regard to the fact that they had been discharged prior to the appeal, many veterans might be deprived of benefits that may be rightfully theirs to keep, depending on the contribution of the discharged attorney to the ultimate disability rating awarded.  This we will not risk.  The analysis set forth here reflects a reasoned compromise between the Secretary's bright line rule precluding payment to discharged attorneys who did not represent a claimant on appeal of the initial disability rating assigned and allowing discharged attorneys to collect 20% of the total past-due benefits awarded without regard for whether they represented the claimant at that particular phase of the claim.

---

[13] This, of course, is one of the underlying principles of *Scates*: it would be unjust for a discharged attorney to take the full 20% of the total past-due benefits awarded if another attorney has been retained because such a rule would make it nearly impossible for claimants to retain substitute counsel.  *Scates*, 262 F.3d at 1365-66.

[14] From Latin, meaning "as much as he has deserved."  BLACK'S LAW DICTIONARY 1255 (7th ed. 1999).

## C. Application in Present Case

### 1. Entitlement

VA regulations provide that VA will honor a fee agreement–that is, an attorney is *entitled* to direct payment of attorney fees from past-due benefits awarded on the basis of the claim–when three conditions are met: (1) the fee agreement provides that the total fee payable to the attorney is 20% or less of the *total* past-due benefits awarded; (2) the fee agreement provides that the amount of the fee to be paid is contingent upon the claim being resolved in a manner favorable to the claimant; and (3) the award of past-due benefits results in a cash payment to the claimant from which the fee may be deducted. 38 C.F.R. § 14.636(h)(1); *see also Cox v. Gober*, 14 Vet.App. 148, 152 (2000) (holding that § 20.609(h) [now § 14.636(h)] creates entitlement on the part of an attorney to fees under qualifying fee agreements); *Aronson v. Derwinski*, 3 Vet.App. 162, 163 (1993) (holding that the Secretary has no discretion to deny payment where the fee agreement meets the regulatory requirements). There is no dispute that Mr. Lippman's fee agreement meets these qualifications and that Mr. Swinger's claim has resulted in cash payments from which attorney fees may be deducted. Therefore, Mr. Lippman is entitled to receive, and the Secretary is obligated to make, direct payment from the past-due benefits awarded to Mr. Swinger "on the basis of the claim." 38 U.S.C. § 5904(d)(1). The Court must now consider what the phrase "on the basis of the claim" encompasses.

### 2. Basis of the Claim

There are, generally speaking, three types of claims for VA disability benefits: (1) an original claim for benefits; (2) a claim for an increased disability rating for an already service-connected condition; and (3) a claim to reopen a previously and finally disallowed claim for benefits. *See* 38 U.S.C. § 5110(a); *Fenderson v. West*, 12 Vet.App. 119, 125-26 (1999); 38 C.F.R. § 3.400 (2009). Mr. Swinger's claim was first denied by the regional office in April 1994. He pursued his appeal, retaining Mr. Lippman in 2000, and in February 2001, this Court granted the Secretary's joint motion for remand. Following the Board's February 2002 remand to the regional office, Mr. Swinger discharged Mr. Lippman. Mr. Swinger, now self-represented, was first awarded benefits for post-traumatic stress disorder in January 2005, when the regional office assigned a 30% disability rating from December 10, 1992 (the date of the initial claim for benefits); a 100% disability rating from

February 22, 1995, to June 1, 1995; and a 30% disability rating thereafter. Mr. Swinger immediately appealed the disability ratings assigned by submitting a Notice of Disagreement, and in September 2005, the regional office awarded an increased disability rating of 50%, effective June 1, 1995. Mr. Swinger again appealed the disability ratings assigned in a Notice of Disagreement, and in June 2007, the Board granted a total disability rating for post-traumatic stress disorder, effective June 1, 1995. Supp. R. at 12. An original claim placed in appellate status by the filing of a Notice of Disagreement remains an original claim; it does not become a new claim for benefits. *Fenderson*, 12 Vet.App. at 125-26. There is no question, then, that Mr. Swinger's long-standing claim for benefits for post-traumatic stress disorder was an original claim.

In a case similar to this one, *In re Mason*, an attorney represented a claimant in a successful appeal to the Court; the Court vacated the Board's decision denying entitlement to VA benefits and remanded the matter for readjudication. On remand, the claimant was assigned a 20% disability rating for his condition, which he promptly appealed. In the meantime, his attorney was awarded direct payment of 20% of the past-due benefits paid as a result of the initial disability rating assigned. The regional office ultimately awarded a 40% disability rating, effective as of the date of the claim, and withheld 20% of the additional past-due benefits for attorney fees, pending a Board decision on the propriety of payment of those fees. The Board determined that the 40% disability rating was not a continuation of the decision granting initial service connection, and therefore the attorney was not entitled to charge fees for his services in connection with that claim. On appeal, this Court held that

> where an attorney successfully represents a VA claimant before this Court and has filed a qualifying attorney-client fee agreement which directs payment by the Secretary from an award of past-due benefits awarded on the basis of the claim filed with VA, the Secretary is obligated to pay directly to the attorney 20% of the past-due benefits awarded on the basis of the claim or application for benefits *underlying the issues successfully appealed to this Court*.
> . . .
> By regulation, the [attorney-]appellant was entitled to a payment of 20% of past-due benefits based on the initial rating of the veteran's claim. The initial rating *includes the ultimate rating granted by VA* after a remand by this Court and prior to the time when a decision on the issue by VA or the [Board] becomes final.

*In re Mason*, 13 Vet.App. 79, 86 (1999) (second emphasis added). Although *Mason* is not directly on point, given the procedural posture of this case (i.e., the Court's remand in this matter was

predicated not on administrative error but on intervening change in law), it is nevertheless instructive. *Mason* held that the 20% contingent fee to be paid to the attorney is based on the *ultimate* disability rating assigned, and therefore determined that the attorney's 20% fee was to be paid out of the total past-due benefits paid based on the 40% disability rating assigned. That is, the Court held that a successful claim for benefits, from initial claim to ultimate disability rating, results in a pool of money from which an attorney may draw his fee. *Id.*; *cf. Scates*, 282 F.3d at 1365-66 (holding that each attorney representing a claimant before VA is entitled to a share of the 20% of past-due benefits awarded).

Because an appeal of the initial disability rating assigned does not result in a new claim for benefits, we see no reason to deviate from the reasoning of *Mason*, and we now expressly hold that "on the basis of the claim," within the meaning of section 5904, means a complete claim, from the initial rating assigned to the resolution of any appeal taken regarding matters that affect the amount of benefits awarded (i.e., disability rating and effective date). In this case, then, the pool of money from which Mr. Lippman's fee may be drawn includes all past-due benefits paid based on the 100% disability rating ultimately assigned by the Board in June 2007 for post-traumatic stress disorder.

### 3. Reasonableness and Excessiveness

Although the Court has determined that Mr. Lippman is entitled to fees for his work on Mr. Swinger's claim, and that his fee may be based on the total past-due benefits paid as a result of the ultimate disability rating assigned on appeal, this is not the end of the matter. Because Mr. Swinger objected, based on his having discharged Mr. Lippman in 2002, to the payment of the supplemental attorney fee based on the increased initial disability rating awarded by the regional office in September 2005, VA was obligated to review the fee agreement and reduce the fee to be paid if it was excessive or unreasonable. 38 U.S.C. § 5904(c)(3)(A). Both the regional office and the Board reviewed the fee agreement, reaching different conclusions. However, because the Board relied on the now invalid portion of § 14.636(h)(3)(i) to find that Mr. Lippman was not entitled to the supplemental payment, the Court must vacate that portion of the Board's June 2007 decision and remand the matter for readjudication applying the framework outlined in this decision. On remand, in addition to the factors listed in § 14.636(e), the Board should consider the following in conducting its quantum meruit analysis:

17

1. The amount and nature of work Mr. Lippman performed on Mr. Swinger's claim for benefits for post-traumatic stress disorder prior to being discharged;

2. the fact that Mr. Lippman has already received $9,123.28 for work done on Mr. Swinger's claim that led to the initial disability rating assigned in January 2005;[15]

3. the timing of Mr. Lippman's discharge;

4. the fact that Mr. Lippman has conceded that he did no work on Mr. Swinger's claim after discharge;

5. Mr. Lippman's statement in his supplemental memorandum that "the most difficult and important issue" in Mr. Swinger's claim was corroborating Mr. Swinger's in-service stressors to establish initial entitlement to service connection (Appellant's Supp. Mem. at 5-6);

6. the amount and nature of work Mr. Swinger did on his own behalf, if any, after discharging Mr. Lippman, and to what extent it was that work, rather than work performed by Mr. Lippman prior to his discharge, that led to the ultimate disability rating of 100% assigned by the Board in June 2007; and

7. any other factors the Board considers relevant to the particular facts of this case.

On remand, Mr. Lippman and Mr. Swinger are free to submit additional evidence and argument in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). In addition, the Board shall proceed expeditiously, in accordance with 38 U.S.C. § 7112 (expedited treatment of remanded claims).

### D. Final Matter

Although the Court has already addressed, in its March 4, 2009, order, issued by the single judge initially assigned to this matter, Mr. Lippman's failure to serve a copy of the Notice of Appeal on Mr. Swinger as required under Rule 3(b) of the Court's Rules of Practice and Procedure, the Court also wishes to express its displeasure with Mr. Lippman's behavior in response to inquiry on this matter at oral argument. Although they do not rise to the level of professional misconduct, Mr.

---

[15] Because Mr. Swinger does not object to the Board's award of $9,123.28 in fees to Mr. Lippman, the Court will not disturb that portion of the Board's decision.

Lippman's dismissive response and nonchalant shoulder shrug at oral argument when the Court inquired as to the reason for the failure to notify Mr. Swinger were not in keeping with proper courtroom decorum. The Court expects practitioners before it to comport themselves with dignity and to demonstrate courtesy to the Court at all times.

## IV. CONCLUSION

Upon consideration of the foregoing, that portion of the June 11, 2007, Board decision that denied entitlement to attorney fees in the amount of $7,525.40 is VACATED and the matter is REMANDED for readjudication consistent with this decision. The remainder of the Board decision is AFFIRMED.